## PEOPLE v. WEBER.

(Supreme Court, Appellate Division, First Department.    March 5, 1909.)

1. LARCENY (§ 3*)—INTENTION.

    Where defendant, claiming to have a customer for a necklace, obtained one of L. on a statement that it was to remain the property of L., but with power to sell it and account for the proceeds, and shortly afterwards pawned it, the intention to defraud, an essential element of the crime of larceny, must have been of the time of receiving the article.

    [Ed. Note.—For other cases, see Larceny, Cent. Dig. § 4; Dec. Dig. § 3.*]

2. CRIMINAL LAW (§ 371*)—INTENTION—EVIDENCE OF OTHER CRIMES.

    To show that when defendant, claiming to have a customer for a necklace, obtained one of L., on a statement that it was to remain the property of L., but with power to sell it and account for the proceeds, he intended to defraud L., it may be shown that at about the same time he obtained other articles of other persons on like terms, and, as in the case of the necklace, immediately pawned them.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 830; Dec. Dig. § 371;* Larceny, Cent. Dig. § 131.]

    McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

· ·Charles A. Weber was convicted of grand larceny, and appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Clark L. Jordan, for appellant.
Robert C. Taylor, for the People.

INGRAHAM, J.· The defendant was convicted on the second count of the indictment, which charged him with having in his possession, custody, and control, as bailee and agent, certain personal property, to wit, a necklace of the value of $6,500, which he did feloniously appropriate the said goods, chattels, and personal property to his own use with the intent to deprive and defraud the owners thereof of the same. It appeared from the evidence: That the firm of Ludeke & Heiser were dealers in precious stones and the owners of a certain pearl necklace; that the defendant had had various business transactions with it from time to time since 1898; that on September 17, 1906, one of the members of this firm had a conversation with the defendant over the telephone, at which the defendant asked him whether the firm had in stock a pearl necklace which he had before received "on memoran-ᴊ dum"; that the defendant was informed that the firm did not have that necklace, but had several others, of which the member of the firm who was a witness gave the price; that the defendant then asked if he might have one of the necklaces then spoken of, which had been priced at $6,500, to which the witness answered that he might have it "on memorandum," upon which the· defendant said he would send his brother down for it; that subsequently the defendant's brother came and received the necklace with the "memorandum bill" wrapped up and sealed in a brown envelope and addressed to the defendant. On cross-examination the witness said: That his· best recollection was that the words "on memorandum" were used in this telephone conversation, but he would not be absolutely positive of it; that his best recollection on the subject was that the defendant asked for a pearl necklace "on memorandum," but he would not say positively whether the word "memorandum" was used.

The witness further testified: That he had a conversation with the defendant a few days after September 26, 1906, and asked the defendant whether he could give the witness a report on that necklace, and the defendant said that he had obtained it for a special purpose to show to a person who had two daughters, one of whom was in possession of a necklace already, and the other was trying to get one. That the father was going to buy one for the second daughter, and the necklace would probably be sold, but he could not hurry it, and the witness should have a little patience. That subsequently on October 15th he had a talk with the defendant over the telephone and told the defendant he wanted a report on the necklace by Saturday, the 20th, and the defendant said there would be no doubt about a report on that day, and that there would undoubtedly be a sale. That a memorandum transaction had a special meaning well understood in the trade, which is that the property remains the property of the dealer, and the per-

son receiving the article is to either sell it and account for the proceeds, or return the article upon demand; that the defendant was subsequently adjudicated a bankrupt, and there was delivered to the complainant a pawn ticket by the trustee in bankruptcy representing this article. The complainant subsequently identified the necklace, paid the amount for which it had been pawned, and recovered it.

The memorandum which had been sent to the defendant with the necklace was not produced, but the testimony was that it was a printed blank filled up as describing the particular article delivered on memorandum, and the printed part of this ticket or invoice was introduced in evidence. That contained the word "memorandum," and also the following:

"The goods described below are sent to you for your inspection. They are the property of Ludeke & Heiser, and are to be returned to them on demand."

It was then conceded that the defendant had pawned this necklace, receiving as a loan $2,000 on September 19, 1906, two days after he had received it from the complainant.

The people having rested, the defendant was called as a witness, and testified: That he had had business with the complainant since 1898; that he bought goods from the complainants, and they had sent him goods on numerous occasions; that in every such instance he returned to the complainants the goods he had obtained from them or the money for them. The defendant then testified to his conversation with the complainant at which he said that he was in the market for a pearl necklace ranging from $10,000 to $15,000; that the complainant said that the nearest they had to that was $6,500, whereupon the defendant said that he did not think one for $6,500 would be large enough, but that he would like to look at it, and thereupon the complainant said he would send it to him. On cross-examination defendant said: That he had received in all his dealings with the complainant a bill containing the printed matter which had been introduced in evidence; that on this bill were the words that the goods described were sent to the defendant for his own inspection, and they are the property of Ludeke & Heiser and are to be returned to them on demand; that that was their regular style of billheads; that leaving out the words in writing every transaction he had with the complainant was accompanied on their part by a paper containing the same printed matter as the plaintiff's Exhibit D; that when he received this jewelry from the complainant he knew that it was a memorandum transaction.

There can be no question but that the verdict was amply sustained by the evidence. The defendant concedes having received this jewelry with a bill which stated that the necklace remained the property of the complainant. His claim that he did not know what a delivery on memorandum meant is absurd on its face, but, assuming that he did not, he nevertheless received the jewelry with the distinct statement that it remained the property of the owner. It was not therefore a sale to him, and no title vested in him; he being merely intrusted with its possession for sale. Two days after receiving the necklace the defendant pawned it and received $2,000 from the pawnbroker. Thus having

possession of property for a special purpose, the title to which remained in the complainant, he parted with that possession. Undoubtedly, if he had made a sale of the property, such a sale would not have been a larceny, for it was what was contemplated by the transaction; but he made no sale and pretended to have made none, and the jury were entirely justified in finding that he obtained possession of this necklace with the intention of disposing of it for a purpose other than that intended and made a disposition of the property not authorized by its owner. It is this intention to defraud which is an essential part of the crime, and that intention goes back to the original transaction when he obtained possession of the goods from the complainant based upon the statement that he had a customer for them, when as a fact he obtained them for the purpose of pawning and obtaining money upon them. As proof of this intention the people were allowed to prove other transactions about the same time by which he had obtained other property on memorandum, and which he had used for the same purpose of pawning and obtaining money upon it. It is quite clear that this testimony was competent to prove the defendant's intent. The .count of the indictment under which he was convicted expressly charged that the defendant feloniously appropriated goods, chattels, and personal property to his own use with intent to deprive and defraud the said copartners of the same and of the use and benefit thereof. To prove this intent it was competent to show that at about the same time he had obtained other goods on memorandum and promptly pawned them; this relating to the intent with which he obtained the goods in question.

The case of People v. Loomis, 178 N. Y. 400, 70 N. E. 919, relied on by the defendant, is not at all in point. There the defendant was indicted for stealing property which it was conceded was stolen; the only question being whether the defendant was the thief. The intent of the thief in that case was of no importance, the only question being one of identity, and there it is quite clear that it was incompetent to prove that the defendant had been guilty of the larceny of other property at about the same time. In this case it seems to me that the evidence is competent under the second exception to the general rule specified in People v. Molineux, 168 N. Y. 264–293, 61 N. E. 286, 62 L. R. A. 193, as tending to establish the intent· with which the defendant obtained this property from Ludeke & Heiser. I think there was no error committed which justifies a reversal of the judgment.

The judgment is therefore affirmed.

CLARKE, HOUGHTON, and SCOTT, JJ., concur.

McLAUGHLIN, J. (dissenting). The indictment under which the defendant was convicted charged him with the larceny of a pearl necklace, and it in no way aided the jury, in determining whether the charge were true, to show that he had about the same time stolen another necklace. There was no possible connection between the defendant's transaction with the firm of Ludeke & Heiser, in which he procured the necklace referred to in the indictment, and that by

which he procured one from Eisemann & Bros. The testimony offered on the part of the people as to the latter transaction should have been excluded. It seems to me it is no answer to say that proof of this transaction was received for the purpose of showing defendant's intent. The testimony offered on the part of the people as to the manner in which the defendant obtained possession of the necklace referred to in the indictment, and his subsequent disposition of the same, if believed, amounted to larceny. His intent to wrongfully appropriate the same to his own use was to be inferred from the acts themselves, and this upon the theory that every person is presumed to intend to bring about the natural results of his own acts. Evidence cannot be introduced to establish the commission of an independent crime for the purpose of showing the guilt of a person indicted for a specific offense. People v. Sekeson, 111 App. Div. 490, 97 N. Y. Supp. 917.

In People v. Crapo, 76 N. Y. 291, 32 Am. Rep. 302, this rule was referred to; the court saying:

"An accused person is required to meet the specific charge made against him, and is not called upon to defend himself against every act of his life."

Evidence is sometimes admissible of offenses similar to the one for which a defendant is being tried, but in those cases it is for the purpose of showing a general design or purpose, as was the case in People v. Zucker, 20 App. Div. 363, 46 N. Y. Supp. 766, affirmed 154 N. Y. 770, 49 N. E. 1102, and People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193.

In the recent case of People v. Loomis, 176 N. Y. 400, 70 N. E. 919, the court reiterated what constituted an exception to the general rule as to the inadmissibility of evidence respecting independent crimes, and as there said:

"We cannot say that the error thus committed did not affect the substantial rights of the defendant. It may be that he would have been convicted without the evidence of his confession of the Lewis burglary, but it is enough to say that it may also have been sufficient to resolve against him any reasonable doubt that might previously have been entertained as to his guilt."

I am of the opinion that the judgment of conviction should be reversed, and a new trial ordered.