## THE STATE, DEFENDANT IN ERROR, v. STEPHEN M. EGAN, PLAINTIFF IN ERROR.

Argued November Term, 1912; reargued March 18, 1913—Decided June 18, 1913.

1. Failure to return money or property on demand may be evidence of embezzlement, but is not an essential ingredient of that crime.
2. On writ of error, the court of review does not concern itself with weight of evidence, but only looks to see whether there is any legal evidence to support the verdict or finding below.
3. Where the evidence, according to the view taken of it by the jury, indicates an embezzlement or an unlawful loan, in violation of section 168 of the Crimes act, a finding of embezzlement will not be disturbed on error.
4. An instruction to the jury must be viewed with relation to the issues and the evidence in the case as presented.

On error to the Supreme Court, whose opinion is reported in 53 *Vroom* 317.

For the plaintiff in error, *John Franklin Fort.*

For the state, *Robert S. Hudspeth,* prosecutor of the pleas, *Pierre P. Garven* and *Robert H. McCarter*

The opinion of the court was delivered by

PARKER, J.   Of the five main points made in the argument and brief for plaintiff in error, the first, relating to the summoning and legality of the grand jury, has been settled by the opinion of this court in *State* v. *Zeller,* 54 *Vroom* 666.   The second, challenging the indictment for duplicity, is satisfactorily disposed of in the opinion of the Supreme Court, and the fifth, invoking the fourteenth amendment to the constitution of the United States, is neither argued nor briefed beyond the mere statement that the indictment, conviction and sentence of the plaintiff in error deprived him of his liberty without due process of law.   A reference to the

motion to quash as made in the case and cited to this point in the brief, discloses that it was based on the matters discussed under the first point and settled in the Zeller case. In the absence of any amplification of the point by counsel, we fail to see any merit in it.

The third point is based on the refusal of the trial court to charge the thirty-fifth, thirty-sixth and thirty-seventh requests proffered by defendant. They are as follows:

"35. To convict the defendant of embezzlement four facts must be established by the state to the satisfaction of the jury beyond a reasonable doubt—(a) that he was county collector of Hudson county; (b) that he had funds of the county in his custody; (c) that he failed to account for the same upon demand, or, at some time fixed by the chosen freeholders when he was required to account; (d) that he failed so to account either on demand or at such fixed time, and converted the same to his own use.

"36. The county collector of Hudson county is a statutory public officer and that the moneys received by him from taxes and other sources of revenues come lawfully into his custody and he cannot be held for the crime of embezzlement of such funds if he shall, at any time, on demand by the board of chosen freeholders or other lawful authority, have such funds in his possession and account for the same to the said board of chosen freeholders, or to his successor lawfully appointed and qualified.

"37. For the county collector to unlawfully loan the moneys of the county in his custody, as county collector, is a distinct crime, so made by statute, and such an unlawful loan does not constitute the crime of embezzlement unless the further fact appears that the collector failed to account for the funds in his custody and so loaned, on demand, or at a time fixed for him to account for the same, or to pay the same over to his qualified successor."

The vice of each of these requests is that the crime of embezzlement is made to depend on the failure of the official to return or account for the money on demand or at some time fixed by the board. The statute fixes no such test. *Comp,*

*Stat., p.* 1795, § 168. The gist of the crime of embezzlement generally is the fraudulent conversion of the money or property to defendant's own use, or its fraudulent secretion with such intent. If such conversion took place, demand was unnecessary. 15 *Cyc.* 495; *Com.* v. *Hussey,* 111 *Mass.* 432. Were the law otherwise, clerks might speculate at will with the funds of their employers so long as the speculations were successful and the money ready on demand. Failure to return on demand is usually important evidence of a conversion having taken place, but it is no necessary part of the conversion itself. *State* v. *Reynolds,* 36 *Vroom* 424.

The fourth and last point briefed is based on the court's instructions on the evidence justifying a finding of embezzlement. For a proper understanding of this point a short statement of the undisputed facts is necessary. It was shown without dispute that Egan, as county collector, had the custody of large amounts of county money; that he was intimately associated, both personally and politically, with Robert Davis, a political leader in the county; that Davis was the head and front of the Jersey City Supply Co., a corporation dealing in plumbers' supplies and which frequently received payments of several thousand dollars from the county for supplies furnished; that at the time charged in the indictment Davis asked Egan for a loan of between thirty and forty thousand dollars and said he would send his son, Robert Davis, Jr., to get the money; that Egan gave Davis, Jr., two checks as collector on the county moneys in bank, one for $20,000 and one for $11,500, payable to the Jersey City Supply Co., as if in the course of business, though no such sums were owing that company and no bills were presented therefor; that these checks were deposited to the credit of the company and the amount redrawn by a check signed by Robert Davis, president, to the order of Robert Davis, Jr.; that Egan took as security for the checks a note of Robert Davis, Jr., to his own order on demand, without interest, for $31,500; that the money was never repaid during the lifetime of the elder Davis, and

that after his death it was collected by Egan putting in a personal claim for it in his own name against the estate of Davis, senior.

The statute on which the indictment was based (*Pamph. L.* 1898, *p.* 840; *Comp. Stat., p.* 1795, § 168) provides that "any county * * * collector * * * who shall embezzle, unlawfully loan, or retain in his hands any money received or collected by him for the state, or any county * * * * shall be guilty of a high misdemeanor." The weight of the argument under the present point is addressed to the proposition that Egan's conduct was not an embezzlement, but an unlawful loan. The jury were instructed, and properly, that if they found the transaction was an unlawful loan there could be no conviction under the indictment. The matter is now argued as though this court was to review the finding of the jury as against the weight of evidence, but such a question is not reviewable on writ of error if there be any evidence to support the finding. The case comes here both on a strict bill of exceptions and under section 136 of the Criminal Procedure act. That section in its original form (*Gen. Stat., p.* 1154, *pl.* 170; *Pamph. L.* 1894, *p.* 246) did provide for a new trial where the defendant suffered manifest wrong and injury "upon the evidence adduced at the trial," and in the cases of *Kohl* v. *State*, 30 *Vroom* 445; *Johnson* v. *State, Id.* 535, and perhaps others, the weight of evidence was actually considered. But in the revision of the Criminal Procedure act in 1898 this clause was struck out, and since then there has been no review on writ of error, of the mere weight of evidence. *State* v. *Juggers*, 42 *Id.* 281; *State* v. *Herron*, 48 *Id.* 523. As the law now stands, whether a case comes before us on strict bill of exceptions or under the statute, or both, a review on the facts is limited in any case to the question whether there was any evidence which would support a conviction under the indictment.

That there was such evidence should be manifest from the account of the facts given above. It is true that this

state of facts is not necessarily inconsistent with the theory of an unlawful loan, *i. e.*, that Egan loaned the money as that of the county and without a conversion of it to his own use. But that was exactly the issue presented to the jury by the charge, wherein it was left to them to find whether the transaction was an unlawful loan or an embezzlement. Either theory was permissible on the evidence. The judge might have gone farther than he did, and have instructed the jury that before convicting of embezzlement they must be satisfied beyond reasonable doubt that the transaction was an embezzlement and not an unlawful loan, but no such instruction was requested, and the point is not made now. The jury evidently found an intent of Egan to lend the money as his, which would with the other circumstances support a finding that he had converted it with intent to defraud. If so, there was embezzlement.

An attack is made on the comments of the court on the facts we have discussed, and in particular on the judge's remark: "You can hardly infer that such a transaction was an unlawful loan within the meaning of the statute. Such facts justify, if they do not require, the inference that he converted the money to his own use, and if he acted with intent to defraud, his act is embezzlement." It is said that this amounted to a direction that even if the transaction was a loan it was embezzlement. But this is without substance; as was said by Mr. Justice Bergen in the Supreme Court, it was a mere comment on the evidence.

This brings us to the matter most strenuously urged at the reargument. After being sent out the jury returned into court and propounded a question, which, with the colloquy that followed, is given below:

"The Foreman—* * * Is ·proof that the defendant allowed the money of the county to go beyond his control in itself proof that he did unlawfully and fraudulently take and embezzle and convert to his own use this money with intent to defraud the county?

"The Court—It depends upon the inference which you draw from those facts, together with the other facts in the case. I do not know that I can answer the question any more clearly than that. You must consider the case as a whole. You must draw your inference from that one fact, in the light of all the other circumstances in the case. I am afraid that is as definite as I can be in that respect.

"Juror No. 8—Could you not be a little more explicit if you take this question and look it over?

"The Court—Read the question again.

"The Foreman—Suppose I hand it to you?

"The Court—Yes.

"Juror No. 3—Your honor——

[Foreman hands paper to the court.]

"The Court—Well, I can say that proof that the defendant allowed the money of the county to go beyond his control is in itself *evidence* that he did unlawfully and fraudulently take and embezzle and convert to his own use the money with intent to defraud the county. Whether that *evidence* is strong enough to amount to *proof* as required in a case of this kind is a matter that I must leave to you. Does that help you? [Italics mine.]

"The Jurors—Yes."

Exception was duly sealed to these instructions.

In dealing with the instruction complained of (the last reply quoted), counsel treats it as if it stood by itself, disconnected from all the rest of the case. Whether it is sound or unsound as an abstract proposition need not be considered. If Egan had lent the money on a bond and mortgage of Davis, payable to the board of freeholders, a different question would be presented. But in the case there was only one way in which he allowed the money to get beyond his control, and that was by means of the transactions already described. An instruction must be viewed with regard to the issues raised by the pleadings and the evidence. 12 *Cyc.* 654; 38 *Id.* 1777; and if a charge when so construed is free from error it will not be ground for

reversal, although wrong as an abstract proposition. *Ibid.;* *State* v. *Jones,* 42 *Vroom* 543, 546. Viewed in this aspect, it amounted to no more, and the jury could have regarded it as saying no more, than that proof that the defendant allowed the money of the county to go out of his control in the manner in which concededly he did so allow it to go, was in itself evidence, as the court said, that he embezzled it. Such an instruction was precisely in line with the rest of the charge and was manifestly correct.

The jury found the defendant guilty, "but owing to lack of evidence of intent to defraud the county for personal gain" recommended him to the clemency of the court. It was urged, on motion in arrest of judgment, that such verdict negatives the intent to defraud the county, as well as any intent to convert the money to defendant's use, and bars a conviction of embezzlement. The answer is that one entrusted with the money of another may readily be conceived as taking that money and letting a friend have it for the personal uses of that friend without any thought of gain for himself. None the less there would be a fraudulent conversion to his use, and hence embezzlement.

A careful examination of the whole case leads us to the conclusion that there was no injurious error at the trial, and the judgment of the Supreme Court, affirming that of the Hudson Quarter Sessions, will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, VOORHEES, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, JJ. 8.

*For reversal*—THE CHANCELLOR, GARRISON, MINTURN, BOGERT, CONGDON, JJ. 5.