SAM H. HARRIS and Others, Plaintiffs, *v.* JACK'S THEATRE TICKET SERVICE, INC., and Another, Defendants.

Supreme Court, New York County, December 2, 1930.

*O'Brien, Malevinsky & Driscoll* [*M. L. Malevinsky, Benjamin Pepper* and *Edward C. Raftery* of counsel], for the plaintiffs.

*Fowler & Fay* [*Stanley C. Fowler, Ralph O. L. Fay* and *James C. Paradise* of counsel], for the defendants.

WASSERVOGEL, J. Plaintiffs seek to restrain defendants from " dealing in, trading in, selling and/or reselling any tickets " of admission to the Music Box Theatre or to the performance and presentation of a play entitled " Once in a Lifetime," now being produced at said theatre. The several plaintiffs are the owner and operator of the Music Box Theatre, the managers thereof, and the owner and producer of the play referred to. The individual defendant is the manager of defendant corporation, and as such he controls its activities. The business conducted by the corporation is that of reselling theatre tickets. It is not disputed that since 1922 the defendant corporation was and still is duly licensed as a ticket broker by the Secretary of State pursuant to the provisions of section 168 of the General Business Law (added by Laws of 1922, chap. 590, as amd. by Laws of 1928, chap. 600). For this license defendant corporation pays a license fee of $200 each year. The complaint refers to " the evil of ' scalping ' tickets," that is, the

resale by unauthorized persons of theatre tickets at " extortionate and exorbitant prices " above the box office price.

Then follow general allegations as to the methods employed by those engaged in this business. Plaintiffs allege that they restricted the distribution of their tickets so " that said tickets should not be resold, and shall be void if resold and that the bearer will be refused admission to the theatre." This statement is not altogether accurate. The word " resold " does not appear upon any part of the ticket. Upon its face, however, the following appears: " Warning. This ticket is worthless and admission may be refused unless validated with official stamp of The League of N. Y. Theatres, Inc." Upon the reverse side of the ticket there is the following: " This ticket is a license and is revocable unless sold to bearer by an authorized agent and must bear the official stamp of the League of N. Y. Theatres, Inc." It is conceded that defendants were not authorized agents of the league.

Three instances are alleged by plaintiffs where tickets were purchased from defendants at an increase over the box office price. These tickets had been purchased at the theatre at box office prices. Each bore the official stamp of the League of N. Y. Theatres, Inc. Pursuant to a requirement of the Federal government, the tickets, when resold by defendant, bore the stamp of the broker and the resale price of the ticket. Each ticket was inclosed in an envelope bearing the name of defendant corporation. It thus appears that no fraud by way of concealment was practiced upon the purchasers from defendants, and that even a casual inspection of the tickets when presented at the theatre would have revealed that they had been purchased from defendants and not from an authorized agent of the league. A theatre ticket is a mere token or evidence of a revocable license. Upon learning that tickets have been resold by defendants, plaintiffs have the right to refuse admission to those who had purchased them, pursuant to the terms plainly appearing upon the reverse side of the tickets.

In the case of *Collister* v. *Hayman* (183 N. Y. 250, 255, 256), the Court of Appeals, by VANN, J., held: " The purchaser [of a theatre ticket] is warned in advance of what he is buying. He has notice before he buys of the condition which the proprietors saw fit to make a part of the contract. He acts with his eyes open and if he does not like the condition he need not buy, but if he buys he impliedly assents to the condition." Plaintiffs' refusal to honor tickets purchased from " unaccredited " brokers would undoubtedly have the effect of discouraging prospective patrons of such brokers, and would also strike a mortal blow at the business of the brokers. There is no reason for plaintiffs' refusing to avail themselves of

this remedy. They have not convinced me that this would be a " practical impossibility " as they claim.

Plaintiffs fail to show that the acts complained of in this case are causing or will cause them to sustain such irreparable injury as would warrant the intervention of a court of equity at this time.

Motion denied.