THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* MAX BERGER, Defendant.

Court of General Sessions, New York County, November 30, 1931.

*Thomas C. T. Crain, District Attorney* [*Thomas F. Kane, Assistant District Attorney,* of counsel], for the plaintiff.

*Archibald Palmer,* for the defendant.

FRESCHI, J. Decision on motion to dismiss indictment at the close of People's case and to strike out testimony relative to law of New Jersey as to accomplices.

This action is brought under section 1301 of the Penal Law, entitled, " Bringing stolen property into State, larceny," thus providing another form of larceny punishable as such.

Does the record now present a *prima facie* case that should be submitted to the jury?

The testimony in the People's case is substantially as follows:

The Colgate Palmolive Peet Company, Inc., is engaged in the business of manufacturing soap products, among them Octagon soap. The wrapper of this soap contains a premium coupon like People's Exhibits 2 and 3, redeemable when presented by the original purchaser or customer, or someone on his behalf — no one else having the right to any of the benefits thereunder.

Upon the face of each coupon is plainly printed the word " Non-transferable," and it is subject to the conditions prescribed by the company, contained more fully in the premium catalogue People's Exhibit 4.

Such catalogue shows various articles which a customer can obtain for a definite number of such coupons. Among these premiums is a special kitchen utensil known as an old ivory saucepan with handle and cover, known as a " special." No customer is entitled to receive more than two of these " special " premiums

upon presenting for redemption a certain number of Octagon soap coupons.

These conditions, limitations and restrictions promulgated by the company in connection with its business are reasonable and valid, and every customer is bound by them.

This form of doing business has been recognized as lawful and is a well-known method of advertising to increase and stimulate sales. This company is entitled to carry on its affairs and adopt in connection therewith such means of encouraging its business as it may see fit, provided that in so doing it does not violate any law or public policy, either by unfair competition or otherwise.

In the State of New Jersey, Laws of 1905, chapter 265, there is an act relating to the issuance and redemption of trading stamps and other devices, but it " shall not apply to coupons placed by any manufacturer in or upon packages or goods manufactured by him."

A section of our Penal Law which sought to prohibit the issuance of such coupons or trading stamps was declared unconstitutional in the State of New York. (See *People ex rel. Appel* v. *Zimmerman*, 102 App. Div. 103; *People* v. *Marcus*, 185 N. Y. 257, at p. 264.)

The Colgate Company appointed a number of premium agents in various localities. The witness Joseph R. Berrick, located at Union City, Hudson county, N. J., was engaged under written agreement with the company (People's Exhibit 1), and authorized to redeem coupons for cash or distribute premiums pursuant to the terms of his contract, under which he received a quantity of merchandise belonging to the company for that specific purpose, upon presentation of the coupons.

At all times the title to and in the premiums remained in the company until properly transferred to a holder of coupons entitled to receive the same.

The part of the agreement particularly applying to this subject reads as follows: " The company agrees that it will advertise the existence of the agency and will pay for the services of the agent a commission of $1.20 for each 1,000 coupons. In addition, the company will pay necessary drayage charges and will furnish the necessary stationery, printed forms and other routine supplies necessary for the operation of the agency.

" The agent agrees that, as between himself and the company, ownership in all premiums, premium supplies and fixtures furnished or installed at the expense of the company, shall at all times be in the company; that the premiums shall be held and kept separate and apart from the goods of the agent; that the agent will keep a strict account of all dealings in the premiums and will on demand submit an inventory to the company of all coupons and premiums

in his possession or under his control; that he will at any time on demand deliver up and return to the company all premiums on hand; and that he will pay the company for all premiums not accounted for by coupons or in a satisfactory manner; and that he will faithfully observe and carry out all instructions issued to him by the company.

"The agent further agrees that he will not give or dispose of premiums in any way to dealers in premium coupons, trading stamp concerns, or person associated with either; in the event of any breach of this provision, the company is relieved of its responsibility under the terms of this agreement and the agent automatically waives all claims to commissions or other charges that may be due him."

The defendant was a dealer in the purchase, sale and exchange of coupons of various companies. Some of these he obtained by causing housewives and customers to be solicited therefor.

At any rate, he presented at various times for redemption to Berrick an aggregate number of the Octagon soap coupons and obtained therefor certain "special" premiums.

On one of these occasions he presented additional coupons in the required number and sought to obtain other special premiums. The witness Berrick refused to redeem such coupons, informing the defendant of the restrictions of the agreement with the company. Then it was that the defendant induced Berrick to deliver to him, in violation of his agreement with the owner, large quantities of saucepans upon the presentation of the required lot of coupons for each pan.

In order to induce Berrick to make such an agreement the defendant emphasized that the former's volume of business would increase and he would be entitled to receive perforce increased commission from the company pursuant to his contract upon the increased lot of redeemed and surrendered coupons, besides which the defendant promised to pay him twenty cents a carton for each carton so received.

Thus, with full knowledge of the facts, this defendant, who had made this corrupt bargain with Berrick, aided and abetted him in disposing of the goods and chattels belonging to the company and which the defendant received knowing that he had no lawful right thereto.

From these cartons the defendant removed certain marks of identification (See p. 115 of testimony), and the papers scratched off were invariably burned.

In this case, as in *Sperry & Hutchinson Co.* v. *Weber & Co.* (161 Fed. 219, at p. 221), the transferability of coupons is held to be an essential element of their value to all the parties concerned; and

thus any rights of this defendant in the premises are clearly limited and affected by such limitations and conditions under which the coupons were issued.

Notwithstanding this, the defendant received 300 saucepans contained in 25 cartons in question, on December 19, 1930, on which day a private detective saw the defendant load and carry them away in an automobile truck from the premises of Berrick in New Jersey.

This truck was trailed by Colgate's detective to a garage in Bayonne, N. J., where it was last seen at midnight that day, and again picked up in front of defendant's place of business in Grand street, New York city, N. Y., at eight o'clock the following morning, December 20, 1930.

Subsequently another detective visited and purchased several cartons of saucepans from the defendant; but the defendant, before he would sell them, wished to be assured that the purchaser in that instance was not a detective of the Colgate Company.

This defendant was arrested in April, 1931, for the larceny of the saucepans and criminally receiving the same. Following his arrest a warrant of search and seizure was procured and hundreds of these and other Colgate premiums were discovered in and removed from defendant's place of business.

While the language of the agreement, People's Exhibit 1, must be construed strictly against the company, yet it is clear that the title to the premiums never passed to the agent who received and held the property as bailee for a definite and specific purpose; and nowhere does it appear that the company approved or ratified the acts of the agent in this particular case. At best, when the subject of this larceny was delivered by Berrick to Berger, the most that defendant received was possession through an agent with limited authority. (See *Green* v. *Wachs*, 254 N. Y. 437.)

The company had a right by reasonable conditions to restrict and limit the use of the coupons in the hands of customers or original purchasers, prescribing that only such customers and purchasers of their products were entitled to receive its premiums, which was another way of sharing its profits with its customers.

Where, as in the case at bar, the defendant has notice of these facts, he cannot be heard to say after such warning that he acquired any property right in and to the premiums thus obtained. (See *Harris* v. *Jack's Theatre Service, Inc.*, 139 Misc. 111, at p. 112.)

A taking under these circumstances, if they are to be believed, amounts to a trespass, unless the jury should find that on the contrary title did pass. The consent of the agent under this testimony is not the consent of the owner. (*Payne* v. *Lautz Bros. & Co.*,

168 N. Y. Supp. 369, at p. 371, which states the rule with which I agree.)

What Berrick did, was, in my judgment, not alone a breach of his contract. His acts constitute a violation of the New Jersey law of larceny and, *prima facie*, this defendant, who is charged with aiding and abetting in the commission thereof, must be held answerable as a principal.

The evils aimed at by the terms of the Colgate-Berrick agreement were circumvented by the acts of the defendant and he must be held responsible for the consequences as well under the law of New Jersey as that of our own State.

The intent to defraud, which is the essential part of this crime, may be inferred from these facts and from the many suggestions of defendant to avoid being suspected or detected. (See *People* v. *Weber*, 130 App. Div. 593, at p. 596.)

The motive of the defendant throughout was to obtain " special " premiums at a low cost to him in order that he might market, deal in and sell them for profit to the detriment not alone of the trade in that class of merchandise through these unfair methods of competition, but as well to the injury and damage of the Colgate Company by depriving them of their property by unlawful means. For this the defendant must be held answerable criminally and civilly, I think.

The whole scheme was to effect an evasion of Berrick's obligations toward his employers and to secure the property of the Colgate Company. Consequently the objects sought to be accomplished by that company were overcome by this breach of trust and the misappropriation by Berrick of his consignor's property.

While it may be true that Berrick exercised a limited domain and control over the property, he had no right, for his own benefit, to convert these " special " premiums to his own or another's use. Up to this point I am of the opinion that the testimony shows a conversion of property during the life of the bailment.

The gist of embezzlement is fraudulent conversion in making a disposition of the property not authorized by its owners. (*State* v. *Egan*, 84 N. J. Law, 701; 87 Atl. 455.) The intention to make a wrongful appropriation creates the crime of bailee larceny. (*People* v. *Scudder*, 177 App. Div. 225, at p. 230.)

The defendant now urges among other reasons on his motion for a dismissal of this indictment at the close of the People's case, that there is a failure of *prima facie* proof showing that the property stolen in New Jersey was the identical goods brought into the State of New York.

Here it becomes important to consider the testimony of several

witnesses dealing with this subject, and in that regard the court should be mindful of the substance rather than the form.

So far we have clear proof of the corrupt bargain between Berrick and this defendant at the former's place of business in New Jersey; the delivery to Berger of large quantities at different times of the special premiums to which he was not entitled; that many such premiums were found in defendant's place of business when the search warrant was executed, sufficiently identified as the property of Colgate; and furthermore that similar saucepans bearing the labels of Colgate were sold by Berger to Grayson, a private detective, only after Berger had inquired of him whether he was not a Colgate detective and had received assurances that he was not.

And in the same connection it must not be forgotten that the truck into which Archambault saw twenty-five cartons loaded and which he trailed to Bayonne was the same truck seen eight hours later the next morning with twenty cartons that were being unloaded by this defendant and carried into his own store in this city.

The actual possession of the stolen goods both in Union City and Bayonne — both in New Jersey — by this defendant, coupled with the other circumstances before and after, justifies a reasonable inference that the possession on the next day was the continued possession of the property only eight hours before. The act of taking the property for purposes of sale was so close to the act of unloading it that continued possession may be found by the jury. (See *People* v. *Del Vermo*, 192 N. Y. 470, at pp. 481, 482.)

Larceny and criminally receiving stolen property are distinct and independent crimes. (*People* v. *Spivak*, 237 N. Y. 460.) Since the district attorney has elected to abandon the second, third and fourth counts of the indictment, the case must stand or fall upon the first count charging the commission of the crime of feloniously bringing stolen property into the State of New York knowing the same to have been stolen.

If the proof were exclusively the mere finding of possession of the property in the defendant in New York city, we would not, I feel certain, be warranted in holding that an earlier possession by him could be inferred in New Jersey; but where, as here, we find the defendant participating in a larceny involving similar goods, by aiding and abetting in its commission which makes him a principal, in New Jersey, and that he carried them away for the avowed purpose of trading in such merchandise, it would not be stretching the effect of such evidence too much under all the circumstances here shown, to say that it is a fair and the only inference to be

drawn from such facts that he continued such possession to his place of business in New York, notwithstanding that the original larceny was committed outside the State. (*State* v. *McLennan*, 82 Ore. 621; 162 Pac. 838.)

If the defendant had possession of stolen property, as such, in the State of New Jersey on December 19, 1930, and brought the identical property into this State on December 20, 1930, knowing the same to have been stolen, he would be guilty of the crime of larceny. What *prima facie* reasons are there for believing that the property is the same in both instances? The evidence as to identity may be direct or circumstantial.

Burrill, in his standard treatise on Circumstantial Evidence (at p. 452) says: "In order to give to the fact of possession its full criminative effect, in raising a presumption of guilt against the possessor, it is always indispensable that the property itself be satisfactorily *identified*, in regard to which the following observations will, for the present, suffice.

"Where all that can be proved concerning property found in the possession of a supposed thief, is that it is *of the same kind* as that which has been lost, this will not, in general, be deemed sufficient evidence of its having been feloniously obtained, and some proof of identity will be required. But where the fact is very recent, and the property consists of articles the identity of which is, from their nature, not capable of strict proof, the conclusion may be drawn that the property, being of the same kind, is, in fact, *the same;* unless the prisoner can prove the contrary.

"Thus, if a man be found coming out of another's barn, and, upon his being searched, corn [or grain] be found upon him, of the same kind as that in the barn, the fact is pregnant evidence of guilt."

The author goes on to say: "Identity may be directly proved either by marks, or by the witness' confident general knowledge of the particular goods. * * * In order to raise the requisite presumption of guilt, it is not necessary that the *whole* of the stolen property should be found in the party's possession. The jury may infer the stealing of the whole from the possession of a part. The probability of guilt, however, is increased in proportion as the number found is large and coincident with the number stolen."

Again quoting from Burrill on Circumstantial Evidence (at p. 652): "The most satisfactory means of identifying property of this description is by marks existing upon the goods themselves; such marks being known to the identifying witness, and enabling him to swear positively that the goods found and shown to him with such marks upon them, are the same with those claimed to

have been stolen. The mere general appearance of goods, which are without marks of this character, ordinarily leads to no more definite conclusion, and no nearer approach to identification than that they are of the *same kind*, which, as already shown, is, without other circumstances, insufficient evidence for the purpose in view."

Taking all the evidence, a pure question of fact is presented for the jury. (*People* v. *Barry*, 132 App. Div. 231, at p. 240.)

With respect to defendant's motion to strike out the testimony of the witness Besson, concerning the rule of law in New Jersey that no corroboration of an accomplice is necessary, we must keep in mind that the substantive crime is the act of stealing in New Jersey. Over this we have no jurisdiction, but when the one who is a party to that offense brings the proceeds of the larceny into this State, he may be prosecuted in our courts for a violation of section 1301 of our Penal Law. He may be convicted and punished in the same manner as if such larceny had been committed within the State.

Berrick, one of the accomplices, has testified against this defendant and it is my judgment that the quantum of proof to establish the commission of the crime must be such as will satisfy the laws of New York State and here a conviction cannot be had upon the testimony of an accomplice alone, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime. The law of evidence of this forum is controlling in the trial of this cause.

Section 1308-a of the Penal Law governs only in prosecution for criminally receiving stolen property, which has been eliminated by the district attorney here. Therefore, I feel constrained to hold that the testimony affected by this motion is immaterial and should be stricken out.

Ordered accordingly.