133 N.J. Super. 563 (1975)
338 A.2d 14
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH MORIARTY AND SHIRLEY MARIE WATFORD, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1974.
Decided April 10, 1975.
*567 Before Judges LORA, HANDLER and TARLETON.
Mr. Alan Silber argued the cause for appellant Joseph Moriarty (Messrs. Brown, Vogelman & Ashley, attorneys).
Mr. Horatius A. Greene, II, argued the cause for appellant Shirley Marie Watford (Mr. William O. Perkins, Jr., attorney and on the brief).
Mr. Michael Graham, Deputy Attorney General argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. L. Steven Pessin, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by HANDLER, J.A.D.
A four-count indictment returned by the state grand jury charged that (1) defendants Joseph Moriarty and Shirley Marie Watford a/k/a Shirley Marie Dawson (hereinafter Watford) conspired to possess lottery paraphernalia, in contravention of N.J.S.A. 2A:98-1 and N.J.S.A. 2A:98-2; (2) Moriarty did knowingly possess *568 lottery paraphernalia, in contravention of N.J.S.A. 2A:121-3(b); (3) Watford did knowingly possess lottery paraphernalia, in contravention of N.J.S.A. 2A:121-3(b), and (4) Moriarty did willfully and knowingly commit an assault and battery upon a law enforcement officer, in contravention of N.J.S.A. 2A:90-4. Prior to trial a motion to suppress evidence was made by defendants, which was denied. Defendants were then jointly tried and the jury found them guilty as charged on all four counts of the indictment.
Moriarty was sentenced to the New Jersey State Prison for concurrent terms of 2 1/2 to 3 years and separate fines of $1,000 on the two gambling counts; and a consecutive 1 to 2 years and a $1,000 fine on the fourth count for the assault on a police officer. Watford was sentenced to the Hudson County Penitentiary to concurrent terms for 1 year, 4 months to be served in custody, with 8 months suspended and 2 years probation for the gambling charges. Defendants each filed a notice of appeal from their convictions, which appeals were consolidated.

I
Defendant Watford contends that she was not accorded a fair trial or a trial by an impartial jury. She asserts that she was entitled to a mistrial, or at the very least a severance should have been granted, because of a newspaper article appearing in the New York Daily News during trial. It is her contention that the combination of this newspaper article with "Newsboy" Moriarty's reputation presented a "substantial probability" that her due process right to a fair trial was subverted.
Upon being informed of the existence of this article the trial judge conducted a voir dire of all members of the jury. By the time the last juror was questioned it was clear that none of them had read the article or knew of its existence. In addition, it was discovered that, although a copy of the Daily News had been brought into the jury room, this edition did not contain the offending article.
*569 It is within the discretion of the trial judge whether to grant severance or any other appropriate relief where prejudice is alleged. R. 3:15-2(b); State v. Sinclair, 49 N.J. 525, 550 (1967); State v. Yedwab, 43 N.J. Super. 367, 380 (App. Div.), certif. den. 23 N.J. 550 (1957). A denial of severance by a trial court will not be disturbed upon appeal unless there is a clear showing of abuse of discretion. State v. Rios, 17 N.J. 572, 584 (1955); State v. Yormark, 117 N.J. Super. 315 (App. Div. 1971), certif. den. 60 N.J. 138 (1972). The trial judge committed no error in ruling that no prejudice was suffered by defendant and that neither a severance nor a mistrial was justified by virtue of the newspaper article.
Watford also contends that it was prejudicial for her to have been tried jointly with Moriarty because of inevitable jury bias attributable to the fact that he was a notorious gambler. No timely motion for severance on this ground, however, was made and she failed utterly to demonstrate that any juror was biased because of Moriarty's notoriety.
This defendant also questions whether prejudice was created by the trial judge in ordering a sequestration of the jurors. Whether or not the jury is to be sequestered lies in the sound discretion of the trial court. His decision will not be disturbed on appeal, save for abuse of discretion. Koolish v. United States, 340 F.2d 513, 528 (8 Cir.1965), cert. den. 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965); Estes v. United States, 335 F.2d 609, 615 (5 Cir.1964); cert. den. 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965). In light of the circumstances it cannot be said that the trial judge abused its discretion in this respect.

II
Defendant Moriarty contends that the application for a search warrant based upon an affidavit of Detectives Roon *570 and Dragatto failed to establish probable cause to search vehicle UJR-501 and its occupant.
It is also asserted that the warrant was deficient in that it failed to identify Moriarty as the person to be searched or to describe him with sufficient particularity, defendant being described in the warrant as a "white male, wearing black horn-rimmed glasses."
Defendant has not furnished the court with a transcript of the hearing upon the motion to suppress. We are, nevertheless, of the view that upon the merits his contentions must fail.
The application for the warrant, fairly read, demonstrates sufficiently that the described person was observed to be engaged in lottery operations utilizing certain automobiles, one of which was the vehicle with the registration UJR-501. There was, therefore, a sufficient showing of probable cause for the search of this vehicle and its occupant. We are also satisfied that the description of the subject or person to be searched was not fatally deficient, considering especially the circumstance that the officers executing the warrant knew the person to be searched. State v. Malave, 127 N.J. Super. 151 (App. Div. 1974); cf. State v. Bisaccia, 58 N.J. 586 (1971).
Defendant contends that the trial court improperly restricted the cross-examination of the State's two key witnesses. In particular, he asserts that he was prevented from pursuing the issue of why Moriarty's name was not mentioned in the affidavit in support of the search warrant. He also states that he was prevented from delving into Roon's prior knowledge of Moriarty stemming from his relationship with a suspended Jersey City police officer, Detective Bullock. It is asserted that he was foreclosed in cross-examining the witnesses, Santelli and Roon, on the crucial issue of "whether it really was Joseph Moriarty in horn-rimmed glasses * * * who received a brown paper bag from *571 Shirley Marie Watford" on a particular date during the course of their surveillance.
Prefatorily we would observe that, in our view of the examination and cross-examination of the various witnesses, including Santelli and Roon, the defense was not fettered or circumscribed unduly in its efforts through cross-examination to explore fully the bases for the identification of Moriarty. Santelli, who had known Moriarty from a previous incident involving a kidnapping of defendant, clearly was in a position to identify defendant positively, as he did. The detectives who applied for the warrant were Dragatto and Roon. In actuality, neither was cross-examined to any extent as to why Moriarty was not referred to by name in the affidavit. While the defense did endeavor to cross-examine Roon as to his knowledge of Moriarty's identity prior to the application for the search warrant, it was established, without substantial dispute, that Roon did come to know or strongly suspect Moriarty's identity before he made the application for the search warrant. It was not highly significant, in the context of the evidence, that Roon may have come to this knowledge or belief prior to April 13, 1972, since this information in any event antedated the application for the warrant. Thus, defense counsel was able to exploit, for what it was worth, the asserted anomaly as to the prior knowledge of the investigating officers as to Moriarty's identity and their failure to identify him by name in the affidavit in support of the search warrant.
The court did restrict the cross-examination of Roon in some respects concerning the information obtained from Bullock, who was an informant. In the course of a proffer, out of the presence of the jury, it became apparent that the information brought by Bullock added nothing new or significant to the pending investigation. We conclude, upon our review of the record, on this issue, that the trial court did not abuse its discretion in placing limits upon the extent of cross-examination of State's witnesses and that particularly *572 any asserted errors in this respect with regard to the cross-examination of Detective Roon had no appreciable impact on the outcome of the case, in light of the convincing evidence of the identification of Moriarty.
Defendant further argues, with respect to his conviction for assault upon a police officer, that the trial judge improperly restricted the introduction of evidence as to a kidnapping of defendant approximately two years before his arrest and the nature of the injuries which he had sustained as a result thereof. These circumstances, according to defendant, were relevant to the issues of his intent and knowledge as elements of this charge.
The trial judge did prohibit certain questions during the cross-examination of Santelli, who on direct examination had been permitted to testify, over objection, that he had met and questioned Moriarty at length approximately 11 months before his current arrest. This testimony had been permitted as tending to show that Moriarty knew Santelli and knew that he was a police officer performing his duty when defendant was stopped, searched and arrested by Santelli and Roon. While the judge did not allow testimony as to the circumstances of a kidnapping, Santelli was allowed to testify that Moriarty was in an injured condition, had been hospitalized and was drowsy when he was questioned on the prior occasion. Moriarty, on his own direct examination, was similarly allowed to testify as to his physical and mental state on that occasion. In refusing to permit questions as to the circumstances which gave rise to Moriarty's physical injuries and hospitalization on that prior occasion  apparently a kidnapping and beating  the court determined that this would entail a subject which would be collateral, prejudicial and confusing, although Moriarty stated repeatedly and non-responsively that he had been kidnapped and beaten.
The judge, we conclude, did not create reversible error with respect to curtailing testimony as to defendant's *573 earlier kidnapping and resultant injuries. While these factors had some bearing on defendant's state of mind or intent at the time of his apprehension  the possibility that he believed that he was being kidnapped rather than arrested  and on the issue of whether he recognized Santelli as an arresting officer, this exploration and development would have been collateral to the essential issues to be resolved and clearly productive of confusion and undue consumption of time. Evid. R. 4; State v. Gallicchio, 51 N.J. 313 (1968), cert. den. 393 U.S. 912, 89 S.Ct. 233, 21 L.Ed.2d 198 (1969). The impact of the judge's ruling upon the outcome of the case was not substantial in light of the convincing evidence that the police officers identified themselves and that Moriarty in fact committed an assault and battery while attempting to escape from their efforts to restrain him.
Defendant also argues that the defense of self-defense or justified resistance was, as a matter of law, raised by the evidence. In this circumstance, it was the trial judge's function to determine if sufficient proof had been elicited to send the issue to the jury. State v. Montague, 55 N.J. 387 (1970); State v. Gardner, 51 N.J. 444 (1968). Whether there is sufficient proof must be viewed in a light most favorable to defendant. State v. Mulvihill, 57 N.J. 151, 154 (1973).
It is recognized that "a private citizen may not use force to resist arrest by one he knows or has good reason to believe is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances obtaining." State v. Koonce, 89 N.J. Super. 169, 184 (App. Div. 1965). The duty imposed on the citizen to submit also obtains when the restraint by the police officer is for any lawful purpose. State v. Mulvihill, supra. If, however, the citizen resists, the officer is not only justified in but has the duty of employing such force as is reasonably necessary to overcome the resistance and accomplish the arrest. *574 Id. But, the citizen may protect himself whenever the force applied is excessive and unnecessary. Id. 57 N.J. at 157. A right of self-defense, in this circumstance, however, may be exercised only if the repelling force is no greater than that which reasonably appears to be necessary and if submission to the excessive force would not end its use. Otherwise, the defense is forfeited. Id.
The testimony by the State's witnesses indicated that Moriarty was approached by two police officers after they had "boxed in" his vehicle with theirs. Both police officers displayed their identifications to Moriarty and told him that they had a search warrant for the car and for Moriarty's person. Santelli told Moriarty to shut off the ignition and get out. When Moriarty remained motionless, Santelli started to reach in to shut off the ignition, and defendant then restarted the car and proceeded to move it. At that point, Santelli lunged in and turned off the ignition. There is no evidence remotely suggesting that force was ever directed at Moriarty or that force was unnecessarily applied in any way to effectuate the detention. Moreover, Moriarty testified that a "fat Pollack"  not Santelli  "dove" into the car on top of him to shut off the ignition. He denied even believing that he was involved with police officers or that he used any force at all. Thus, his testimony was not aimed at establishing the reasonableness of his physical behavior in light of alleged egregious police conduct. Consequently, the trial judge was correct when he denied defendant's request to charge on self-defense. Since it was not supported by the facts, it should not, therefore, have gone to the jury. State v. Montague, supra.
During the course of their deliberations the jury sent this question to the trial judge: "If no intention of assault, but a jostling occurred, how does the law apply?" Defendant Moriarty objected to the charge given by the judge in response to the question, contending in effect that the court had eliminated intent from the crime. The charge was allowed to *575 stand. On appeal Moriarty again complains that the supplementary instruction was prejudicial because it confused and misled the jury.
The trial judge in its charge to the jury re-instructed it as to the three elements constituting an assault and battery upon a law enforcement officer. He charged further:
Now, how may you find intent? Every person is under an obligation to submit to an arrest and to refrain from using force to resist either the initial apprehension or any continued detention in the custody of a law enforcing officer. If a person under those circumstances jostles, grapples, pushes or shoves the arresting officer, he is committing an unlawful act.
If you believe beyond a reasonable doubt that Joseph Moriarty jostled, grappled, pushed or shoved the arresting officer under those circumstances, he committed an unlawful act. And where the act is unlawful it is unnecessary to show an unlawful intent, it being implicit in an unlawful act. It may be inferred by the injury from the unlawful act.
The supplemental instructions were in accord with the general rule that a private citizen may not use force to resist an arrest by one he has good reason to believe is a law enforcement officer performing his duties. State v. Washington, 57 N.J. 160 (1973); State v. Mulvihill, supra; State v. Koonce, supra.
The charge did not remove the intent issue from the jury's consideration. The judge, after reiterating the elements of the crime, carefully defined intent and how it can be ascertained. The reference to an unlawful act in the supplemental charge adequately denoted the act of resisting or failing to submit to an arrest or detention. The judge did not by this instruction charge the jury that an unlawful act had been committed. Cf. State v. Hanly, 127 N.J. Super. 436 (App. Div. 1974). The charge that the unlawful intent was implicit in the wrongful act, involving, as it did, resisting arrest, was not erroneous. Cf. State v. Chiarello, 69 N.J. Super. 479, 490 (App. Div. 1961), certif. den. 36 N.J. 301 (1962); State v. Adamo, 9 N.J. Super. 7 (App. Div. 1950). *576 Other criticisms of this supplemental charge  that it was not properly responsive or that it indicated the possible commission of a lesser crime, resisting arrest rather than assault and battery upon a police officer  are without merit.
For the foregoing reasons, the convictions of defendants Watford and Moriarty are affirmed.