845 A.2d 669

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. MICHAEL HAMILTON, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. CAROL KNOTT, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 9, 2004—Decided April 5, 2004.

Before Judges CIANCIA, PARKER and R.B. COLEMAN.

*Bruce I. Afran* argued the cause for appellants (*Falk Engel and Mr. Afran,* on the brief).

*John M. Jingoli, Jr.,* Assistant Prosecutor, argued the cause for respondent (*Joseph L. Bocchini, Jr.,* Mercer County Prosecutor, attorney; *Mr. Jingoli,* of counsel and on the brief).

The opinion of the court was delivered by

CIANCIA, J.A.D.

Defendants Michael Hamilton and Carol Knott were found guilty of the petty disorderly persons offense of defiant trespass, *N.J.S.A.* 2C:18-3b, following consolidated trials in both the municipal court and the Law Division. Although separate notices of appeal were filed with this court, we granted appellants' motion to consolidate the cases. At all times both defendants have been represented by the same counsel, and no factual distinctions of any legal significance have ever been asserted.

The essence of the defendants' position now, and as it was in the Law Division, is that they were charged with trespassing on municipal property owned by Princeton Township, i.e., the Princeton Sewer Operating Committee (SOC) when, in fact, the alleged violation took place on county property within the right-of-way

boundary of a county road. This discrepancy allegedly constituted a defect in the prosecution that violated defendants' right to due process. Defendants further argue that defiant trespass cannot legally occur in the right-of-way of a public road. We find no merit in defendants' contentions and affirm substantially for the reasons given in the oral decision of Judge Bielamowicz sitting in the Law Division.

The gravamen of this matter was a protest by approximately two dozen citizens against a municipal deer-culling operation. On January 21, 2002, protestors, including defendants and an attorney who advised them, arrived at the entrance to the SOC property where certain aspects of the deer hunt were being staged and carried out. The township chief of police happened to be leaving the SOC property at the time. He testified that protestors were in the roadway blocking traffic. He called for assistance and other township officers, including Corporal Michael Cifelli, arrived shortly. Cifelli observed about twelve people in the SOC driveway. The attorney with the group was told that the group was free to demonstrate on the other side of the two-lane road but, if they returned to the entrance area of the SOC, they would be placed under arrest. The record reflects that these instructions were conveyed to the protestors, understood, and complied with. Corporal Cifelli repeatedly made it clear to the demonstrators that they were not to "return to that driveway." Judge Bielamowicz found, and the record amply supports, that defendants intentionally violated this restriction with the intent of being arrested in order to make their point to, among others, members of the press who were present.

As to defendant Hamilton, Cifelli described what occurred, starting on the side of the road where the demonstration was permitted:

A Mr. Hamilton approached and requested the opportunity to inspect the butchering facility that was on location at the SOC property. I advised him at that time that I couldn't permit that and any arrangements for his desire to do so could be made through the mayor's office.

Q And what, if anything, did Mr. Hamilton then do?

A Mr. Hamilton then stated to me, "Well, I have no intention of resisting arrest." I responded, "Mr. Hamilton, as long as you don't put me in a position to do so, I have no intention of arresting you today."

Q What was the next thing that occurred?

A I turned and proceeded to walk back across River Roadway [sic] to the SOC driveway.

. . . .

Q And you indicated that you returned to the driveway?

A That's correct. As I indicated before, I was standing on the shoulder across River Road from the SOC facility in a conversation with Mr. Engel. After my conversation with Mr. Hamilton I turned to return to the SOC area into the driveway. Mr. Hamilton followed me across the roadway. As we got about halfway across the roadway I had realized he was behind me, I turned—

Q The roadway that you're referring to—

A Is River Road.

Q Okay.

A I had stopped, turned to Mr. Hamilton and advised him once again that if he proceeded across the roadway and onto the SOC driveway that he would be placed under arrest.

Q And was there any response to that by Mr. Hamilton?

A By Mr. Hamilton? He acknowledged exactly what I had told him. I then turned and continued across the roadway and Mr. Hamilton followed me. As we reached the SOC driveway on that property, he was placed under arrest.

Defendant Knott was arrested shortly thereafter when she too entered "into the driveway of the SOC facility."

Both defendants were charged with trespassing on Sewer Operating Committee property of Princeton Township. The complaints alleged, among other things, that the restriction, not to trespass, was actually communicated to the defendants.

The record reflects that the point of trespass was functionally the entrance driveway to the municipal property, but legally it was still within the county road right-of-way that extended about twenty feet beyond the edge of the paved two-lane road. The charging officers believed the point of infraction was on municipal property and apparently the demonstrators also thought the arrests occurred on the SOC driveway. The State learned of the mistake in the complaint about six weeks prior to trial in municipal court and readily admitted the discrepancy during that trial. Defendants were also aware of the discrepancy before trial in

municipal court, although they were not aware the State would concede the issue.

 We find no violation of defendants' due process rights. In relevant part, *N.J.S.A.* 2C:18-3 provides:

> b. Defiant Trespasser. A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:
> (1) Actual communication to the actor....

The elements of *N.J.S.A.* 2C:18-3 do not include the particular characterization of the infraction location and although such a mistake could hypothetically impair the legitimacy of a charged violation, no such impairment occurred in the present instance. Defendants knew exactly where they should not go and where they were permitted to be. There was no confusion or mistaken beliefs by defendants. Corporal Cifelli made it abundantly clear that the protestors were not to cross the road onto the driveway entrance. Defendants chose to ignore this reasonable and explicit limitation on their right to demonstrate. The discrepancy in the complaint did not alter the substantive offense charged. The complaint could have been amended by the municipal court judge during trial. *R.* 7:14-2; *see also, State v. Ryfa,* 315 *N.J.Super.* 376, 718 *A.*2d 717 (Law Div.1998) (holding that municipal court had authority to amend summons charging driving under the influence of alcohol to reflect undisputed locale of offense where summons originally indicated wrong municipality). The failure to actually amend the complaints in the present instance is inconsequential in light of defendants' knowledge and the State's admission that the trespass occurred on county property. If defendants really believed that trespass on a county right-of-way presented them with defenses not available when charged with trespass on municipal property, they were able to raise those arguments at any time, including prior to trial in municipal court. *R.* 7:7-1. They chose not to do so, relying instead on the technical argument that the complaints misdescribed the true location of the offenses. In fact, defendants knew precisely that which they were called upon to defend.

 Moreover, defendants' contention that defiant trespass cannot as a matter of law be committed on the right-of-way of a public road is simply incorrect. The statute itself recognizes no such limitation. In *State v. Brennan*, 344 *N.J.Super.* 136, 780 *A.*2d 585 (App.Div.2001), *certif. denied,* 171 *N.J.* 43, 791 *A.*2d 221 (2002), we upheld a conviction for defiant trespass in a public building. While there may be some public areas so traditionally devoted to use as a public forum that only a very unusual set of circumstances would permit a successful prosecution for defiant trespass, the right-of-way of a public road in a suburban, perhaps rural, area is not such a public forum. *See, e.g., Paff v. Kaltenbach,* 204 *F.*3d 425, 433 (3d Cir.2000) (determining that a sidewalk was a non-public forum permitting greater governmental restrictions on First Amendment activity); *State in Interest of L.E.W.,* 239 *N.J.Super.* 65, 75, 570 *A.*2d 1019 (App.Div.), *certif. denied,* 122 *N.J.* 144, 584 *A.*2d 216 (1990) (stating that in the face of actual notice, the public nature of privately-owned property makes no difference to a trespass charge if constitutional rights are not impaired). And, although the present case has never been defended explicitly as a First Amendment case, that is the implicit thrust of defendants' claim that demonstrators cannot legally trespass on a public right-of-way. In *State v. Schmid,* 84 *N.J.* 535, 423 *A.*2d 615 (1980), the Court addressed the parameters of First Amendment activity on the grounds of Princeton University. Although Schmid's trespass conviction was overturned, the Court noted:

> The public's right to exercise its freedom of speech does not mandate unrestricted access to university facilities. Even with respect to public property, the public's use of that property for First Amendment activity may be restricted, if not actually prohibited. *See, e.g., Adderley v. Florida,* 385 *U.S.* 39, 47, 87 *S.Ct.* 242, 247, 17 *L.Ed.*2d 149, 155–156 (1966) (public may be prohibited from demonstrating on the grounds of county jail); *American Future Systems, Inc. v. Pennsylvania State Univ.,* 618 *F.*2d 252, 255 (3 Cir.1980) (state university regulation forbidding sales demonstrations and solicitation in university-owned and operated residence halls is constitutional); *Wolin v. Port of New York Auth.,* 392 *F.*2d 83, 94 (2 Cir.1968), *cert. den.,* 393 *U.S.* 940, 89 *S.Ct.* 290, 21 *L.Ed.*2d 275 (1968) (regulations may limit public's use of public property for expressional activity to ensure that that activity does not interfere with the use to which the property is dedicated).

[*Id.* at 567, n. 12, 423 *A.*2d 615.]

■ Circumstances can readily be hypothesized where public property is subject to legitimate restrictions. If the police cordon-off a street because a public official is passing, or the occurrence of an accident, or a terroristic threat, certainly anyone on notice of such restriction who knowingly violates it can be subject to a charge of trespass even if the violator is exercising First Amendment rights. In *State v. Lashinsky*, 81 *N.J.* 1, 404 *A.*2d 1121 (1979), a press photographer failed to heed a police officer's order to move away from an automobile accident on the Garden State Parkway. The photographer was properly convicted of violating *N.J.S.A.* 2A:170–29(2)(b),[1] which rendered any person who "[o]bstructs, molests, or interferes with any person lawfully therein ..." a disorderly person. Writing for the Court, Justice Handler stated:

> Courts are attuned to gauge the reasonableness of a policeman's actions in citizen-police confrontations and to sort out police behavior which is lawful and proper from that which is not. *E.g., Adams v. Williams,* 407 *U.S.* 143, 146, 92 *S.Ct.* 1921, 1923, 32 *L.Ed.*2d 612, 617 (1972); *Terry v. Ohio,* 392 *U.S.* 1, 20–27, 88 *S.Ct.* 1868, 1879–1883, 20 *L.Ed.*2d 889, 905–909 (1968); *State in Interest of H.B.,* 75 *N.J.* 243, 248, 381 *A.*2d 759 (1977) (stop-and-frisk cases); *State v. Washington,* 57 *N.J.* 160, 162–163, 270 *A.*2d 282 (1970); *State v. Moriarty,* 133 *N.J.Super.* 563, 573–575, 338 *A.*2d 14 (App.Div.1975), *certif. den,* 68 *N.J.* 172, 343 *A.*2d 459 (1975) (resisting arrest cases). Judge Goldmann observed that "... [t]he duty of police officers, ..., is 'not merely to arrest offenders, but to protect persons from threatened wrong and to prevent disorder. In the performance of their duties they may give reasonable directions'". *State v. Taylor, supra,* 38 *N.J.Super.* at 30, 118 *A.*2d 36, quoting from *People v. Nixon,* 248 *N.Y.* 182, 188, 161 *N.E.* 463, 466 (Ct.App.1928) and *People v. Galpern,* 259 *N.Y.* 279, 181 *N.E.* 572 (Ct.App.1932); accord, *State v. Manning, supra,* 146 *N.J.Super.* at 596, 370 *A.*2d 499. The average citizen is, likewise, held to a similar standard and deemed capable of differentiating between permissible and impermissible behavior. Reasonableness is the key. Hence, where an officer's instructions are obviously reasonable, in furtherance of his duties, an individual toward whom such instructions are directed has a correlative duty to obey them. *State v. Taylor, supra.* If his refusal to respond results in an obstruction of the performance of the officer's proper tasks, this will constitute a violation of the disorderly persons statute.
>
> [*Lashinsky, supra,* 81 *N.J.* at 10–11, 404 *A.*2d 1121.]

Relying on *Lashinsky,* we stated in *Brennan:*

> Simply stated, if the police are performing a law enforcement function in an appropriate manner, *i.e.,* not with an excessive use of force, then a citizen is

---

[1] Repealed September 1, 1979; *see N.J.S.A.* 2C:98–2.

obligated to comply with the directions of the police. Failure to do so can result in a number of offenses, including ... defiant trespass.

[*Brennan, supra,* 344 *N.J.Super.* at 143, 780 *A.*2d 585; *accord State v. Taylor,* 38 *N.J.Super.* 6, 118 *A.*2d 36 (App.Div.1955).]

As a matter of law, we see no unique qualities of a public roadway that would preclude prosecution for defiant trespass if the facts otherwise warrant such a charge.

Defendants' convictions are affirmed.