## WILLIAM G. JACKSON v. BERT MILLER.

Submitted December 6, 1912—Decided March 12, 1913.

1. Where a deputy fish and game warden, after searching the plaintiff to discover evidence in his possession of violation of the Fish and Game act, detained him without warrant for over one hour, in a public place, and then released him—*Held*, in an action against the officer for false imprisonment a direction of a nonsuit was erroneous.

2. Where a deputy fish and game warden upon what to him seemed probable cause or reason to believe that the Fish and Game law had been violated, arrested the defendant and detained him in custody for over one hour, without a warrant—*Held*, that he was liable for false imprisonment.

3. In such circumstances the duty of the officer was to take the plaintiff to the nearest available magistrate, and upon the evidence in his possession, obtain a legal warrant for the defendant's detention.

On appeal from the Paterson District Court.

Before Justices TRENCHARD, PARKER and MINTURN.

For the plaintiff, *Edward F. Merrey.*

For the defendant, *Edmund Wilson,* attorney-general, *Josiah Stryker* and *Wood McKee.*

The opinion of the court was delivered by

MINTURN, J.   The substantial facts in this case are not disputed. The suit was brought by plaintiff, who is in business at Pompton Lakes, in Passaic county, against the defendant to recover damages for assault and battery and false imprisonment.

The defendant was a deputy fish and game warden, and at Pompton Lakes on Sunday, June 23d, 1912, made an examination of the plaintiff's boat and of his person, for the purpose of discovering whether the plaintiff had been violating the Fish and Game law.   The plaintiff refused to turn out his pockets for inspection, and the defendant thereupon put him under arrest, and then searched the pockets of plaintiff's coat.   Nothing of an illegal character was found as a result of the search, but the defendant informed the plaintiff he would hold him under arrest for six hours, under any circumstances.

Plaintiff insisted upon being taken before a justice of the peace to be dealt with, but the defendant refused to do so, and detained the plaintiff in his custody upon the dock

for one hour, in the presence of curious spectators, and finally dismissed him from custody.

There is a variance in the facts as told by the parties as to what was found in the plaintiff's possession, as the result of the defendant's search; but as that fact is only incidental to the main inquiry presented here, its bearing upon the solution of the difficulty is of no great importance. The judgment of the trial court was for the defendant.

The right of the defendant to exercise the right of search without warrant in this instance cannot be disputed, since the Fish and Game acts concededly vested him with that power. *Comp. Stat., p.* 2559, § 267.

The only limitation imposed by statute upon the officer as a condition to the exercise of this right, is that "he shall have reason to believe that any of the laws for the protection of game and fish have been violated."

The practical effect of this statutory delegation of power was to enable the defendant to perform the duties he undertook to perform in this instance, if he had reason to believe the plaintiff was engaged in violating the law. The reason upon which he acted might be mere suspicion, based upon the plaintiff's general demeanor, or it might be rumors affecting the plaintiff's disposition regarding compliance with the law; all of which motives were of a subjective character, or to use the phrase of the civil law, largely *in pectora.*

The question of the constitutionality of the Fish and Game act we do not consider is before us, and we find it unnecessary to enter into any discussion concerning it. *Lang* v. *Bayonne,* 45 *Vroom* 455, 462.

The fact that the defendant "had reason to believe" that the plaintiff was violating the law need not be questioned; and so we are relegated to the inquiry whether, conceding that fact, what the defendant did after his investigation was justifiable in law. Here the fact is not in dispute that he detained the plaintiff in his custody, and subjected

him to the humiliation of detention in the presence of the public for over one hour.

We are unable to perceive any justification for such procedure, either in the statute or the rules of law which govern the defendant's powers and duties, as a peace officer or warden, vested with defined statutory police powers. His plain duty under the circumstances was to bring the plaintiff to the nearest magistrate, and obtain a legal warrant based upon the evidence in his possession. *Winfield* v. *Ludwig,* 52 *Vroom* 375; *Hebrew* v. *Pulis,* 44 *Id.* 621; *Leger* v. *Warren,* 62 *Ohio St.* 500.

The latter case is reported in 51 *L. R. A.* 193, where the learned editor has collected in a valuable footnote the leading cases bearing upon the subject, and the rule is there stated to be that: "A person who has been arrested without a warrant cannot lawfully be held in custody for any longer period that is reasonably necessary to obtain a legal warrant for his detention. Where he is held for a longer period without such writ or other authority from a competent court, he has a right of action for false imprisonment against the officer or person who made the arrest, and those by whom he has been so unlawfully held in custody." To the same effect is 3 *Cyc.* 895, and cases cited.

We think, therefore, that the unnecessary and apparently inexplicable detention in custody to which the plaintiff was subjected by the defendant, rendered the latter liable for false imprisonment, and entitled the plaintiff to recover at least nominal damages.

The judgment is therefore reversed, and a *venire de novo* ordered.