Engels, who is a State Fish and Game Warden, was convicted of an atrocious assault and battery committed upon one Frank Perona by shooting him with a .22 caliber revolver. Engels' defense was this: He was about to search Perona's light automobile truck for game under authority of R.S. 23:10-20; Perona attacked him, and he shot in self-defense.
A few minutes before the shooting, Engels, who was in an automobile, had stopped Perona's truck on the highway to search it. There were high words between the two men. It is not clear whether Engels completed his examination of the contents of the truck before Perona drove off, Engels following closely. They came to Perona's place of residence, where Perona drove from the highway onto his private driveway and Engels did the same, stopping his car a few feet from Perona's vehicle. Both men jumped to the ground, Engels with a black-jack in his hand. Perona seized a stick or club about the size of a baseball bat; Engels darted back to his car where he snatched up the pistol. Engels asserted, and Perona denied, that the latter struck him with the club several times before Engels fired.
Now let us consider objections to rulings of the trial court on evidence offered on the subject of Perona's reputation. Engels was permitted to testify that he knew what was Perona's reputation "for being violent, quarrelsome or dangerous." He was then asked, "What was his reputation?" The Court sustained an objection. Defendant was next asked what was in his mind when Perona was striking him with the club. The Court struck out Engels' answer adding, "I think the witness understands he can't give hearsay evidence. What was in your mind, not what somebody told you." Defendant then answered, "I thought if he hit me in the head with that club, he would kill me." *Page 129 
Later, Mr. Blumberg, counsel for defendant, offered other witnesses to testify to the reputation, good or bad, of Perona as peaceful and law-abiding. Again the prosecutor objected, and the Court asked Mr. Blumberg, "You don't choose to offer anything that he may have done which is unlawful?" Mr. Blumberg stated his view that proof of specific acts would be inadmissible. The Court: "If he has been guilty of any unlawful act, how can a witness testify as to what his reputation may be?" Mr. Blumberg: "I shall put on men who shall specify certain unlawful acts with certain arrests." The Court: "No, I am not going to permit it. It will be denied and you may have your exception."
Evidence is relevant to the issue of self-defense that tends to show that the defendant had reasonable cause to apprehend great bodily harm at the time he committed the alleged assault, and so a defendant is permitted to prove "that his assailant was a violent, quarrelsome and dangerous man and that his reputation for such disposition" was known to defendant. State v. Dart,11 N.J. Misc. 192, 165 A. 289 (Sup. Ct. 1933). The reputation of the assailant lends color to his words and acts and is material to the question whether the fears thereby aroused are reasonable. In the present case, Engels testified that Perona not only struck with the stick, but exclaimed, "I am going to knock your God damn block off" and again, "I will kill you." Participants in a violent happening such as this, commonly exaggerate when relating what happened; the facts generally lie somewhere between the two narratives. Whether the Jury believed that Perona struck Engels with the club or used the words attributed to him, we cannot know. Even if they did so believe, they may have reflected that the blows could not have been very hard, for Engels was not much injured and they may have considered that Engels should not have taken Perona's words seriously. But if the evidence as to Perona's reputation had been received and it was shown that he was reputed to be a man of ungovernable temper, apt to inflict as much injury as possible on the object of his wrath, the Jury might then well have found that Engels had reason to fear great bodily harm. The *Page 130 
rejection of the evidence of Perona's reputation was harmful error.
The Court charged the Jury: "When a person enters the premises of another and is requested to depart and refuses to do so, the owner or head of the family, if it is a dwelling premises, may eject him and is entitled to use such force as is reasonably necessary for that purpose. The instruction must be viewed in relation to the issues raised by the pleadings and the evidence.State v. Egan, 84 N.J.L. 701 (E. A. 1913). It is to be tested by its practical application to the facts of the case.State v. Rombolo, 91 N.J.L. 560 (E. A. 1917). The Jury could not construe the portion of the charge which we have quoted, otherwise than to mean that Perona had a right to eject Engels from the premises where the fighting took place and was entitled to use such force as was reasonably necessary for that purpose. The instructions to the Jury must, of course, be construed as a whole. State v. Martin, 102 N.J.L. 388 (E. A. 1925). We have examined with care the whole of the charge in this case and find nothing in it that restricts or conditions the effect of the part now under consideration.
A game warden who has reason to believe that evidence of a violation of the Fish and Game Law may be found in an automobile which he meets on the highway, may search the car without a search warrant. R.S. 23:10-20. Jackson v. Miller, 84 N.J.L. 189 (Sup.Ct. 1913). If it be necessary to do so, in order to make the search, he has a right to follow the vehicle on to a private driveway. Under such circumstances, he is not obliged to leave the premises upon demand, and the owner has no right to eject him until he has had a reasonable opportunity to make the search. The learned judge of the Quarter Sessions erred in charging as he did the right of the owner of the premises to eject an intruder, without also making clear to the Jury the limitations on that right, growing from what the Jury might find to be the facts of the case.
 The conviction will be reversed. *Page 131