730 A.2d 463 (1999)
322 N.J. Super. 175
STATE of New Jersey, Plaintiff-Respondent,
v.
Candido AGUIAR, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted June 3, 1999.
Decided June 17, 1999.
*464 Ivelisse Torres, Public Defender, for appellant (Mitchell R. Stein, Designated Counsel, on the brief).
Thomas V. Manahan, Union County Prosecutor, for respondent (Patricia L. Cronin, Legal Analyst, of counsel and on the brief).
Before Judges BAIME, A.A. RODRÍGUEZ and LEFELT.
The opinion of the court was delivered by BAIME, P.J.A.D.
Defendant was convicted of aggravated manslaughter (N.J.S.A. 2C:11-4a) and possession of a handgun without a permit (N.J.S.A. 2C:39-5b). We affirmed defendant's convictions in an unreported opinion. Defendant then petitioned for post-conviction relief, contending that the prosecutor had concealed evidence of the victim's prior criminal conviction for murder. The Law Division denied the petition on the ground that the victim's violent character was irrelevant to the claim of self-defense absent evidence that defendant was aware of the victim's dangerous propensities. We reverse and remand for further proceedings. We hold that a victim's conviction for a violent crime is admissible to show that he was the aggressor in the context of a claim of self-defense.

I.
We need not recount the facts at length. Although they resided together, defendant and Aracelly Minia had a tempestuous relationship. In the evening hours of April 3, 1987, defendant went to the Cali Panchanguero, a nightclub frequented by Minia, to tell her to gather her belongings and leave his apartment. An argument developed, resulting in defendant's removal from the club by a security officer.
The events that ensued were hotly contested at trial. According to the State's witnesses, defendant returned brandishing a gun. The prosecutor presented evidence that defendant pointed the gun at Minia and jammed it into her stomach. Silo Ledesma, a stranger to both Minia and Aguiar, intervened. Several witnesses testified that Ledesma's hands were "in the air" when defendant shot him at close range. Others claimed that Ledesma grabbed defendant in a "bear hug" immediately before defendant shot him.
The defense's version was markedly different. Defendant claimed that he carried a gun because Minia had threatened his life in the past, and that he did not brandish the gun at the club. The defense further asserted that Ledesma was in the act of choking defendant when he was shot, and that defendant acted in self-defense.
At trial, defendant's attorney attempted to prove that Ledesma had a violent and aggressive personality. These efforts were totally unsuccessful. The State's witnesses *465 repeatedly characterized Ledesma as a nonviolent, peaceful individual. In his summation, the prosecutor emphasized that "every State's witness" described Ledesma as nonviolent and passive. The jury acquitted defendant of murder, but found him guilty of aggravated manslaughter and related weapons offenses.
Although the facts are in dispute, defendant claims that he first learned of Ledesma's 1978 murder conviction after his unsuccessful appeal. In his petition for post-conviction relief, defendant contended that the prosecutor had concealed the conviction. He asserted, alternatively, that if the State provided the defense with Ledesma's conviction during pretrial discovery, as the prosecutor claimed, then his trial attorney was derelict in failing to use it to bolster his claim of self-defense. Defendant requested an evidentiary hearing. The Law Division rejected defendant's request and denied the petition. The court concluded that a victim's conviction of a violent crime may not be admitted in the absence of evidence that the accused was aware of it.

II.
We begin our analysis with a brief description of our statutes and cases dealing with the justification of self-defense. The use of force against a person in self-defense is justifiable "when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force" by that person. N.J.S.A. 2C:3-4a. The defendant must harbor an actual, reasonable belief that the use of force on his own part is necessary to prevent the imminent application of unlawful force by the assailant. State v. Kelly, 97 N.J. 178, 199-200, 478 A.2d 364 (1984). While it is not requisite that actual necessity exist, the justification of self-defense requires an honest belief on the part of the defendant in the need to use force. Id. at 198, 478 A.2d 364. Honesty alone, however, does not suffice. A defendant claiming the privilege of self-defense must also establish that his belief in the need to use force was reasonable. Id. at 199, 478 A.2d 364. The reasonableness of the defendant's belief is to be determined by the jury using an objective standard of what a reasonable person would have done in defendant's position in light of the circumstances known to the defendant at the time the force was used. Id. at 199-200, 478 A.2d 364; see also State v. Bryant, 288 N.J.Super. 27, 34, 671 A.2d 1058 (App. Div.), certif. denied, 144 N.J. 589, 677 A.2d 761 (1996). With certain limitations that are not germane here, a defendant may use deadly force in self-defense only if he "reasonably relieves that such force is necessary to protect himself against death or serious bodily harm." N.J.S.A. 2C:3-4b(2); see also State v. Moore, 158 N.J. 292, 306, 729 A.2d 1021 (1999) (holding that defendant not entitled to self-defense charge based on non-deadly force rules where defendant actually discharged gun).
Against this backdrop, our decisions have generally permitted the admission of reputation for aggressiveness on the part of the victim of an assaultive offense when "[s]uch evidence bears meaningfully on the conduct and state of mind of the defendant...." State v. Burgess, 141 N.J.Super. 13, 16, 357 A.2d 62 (App.Div.1976); see also State v. Pratt, 226 N.J.Super. 307, 321-22, 544 A.2d 392 (App.Div.), certif. denied, 114 N.J. 314, 554 A.2d 864 (1988); State v. Engels, 2 N.J.Super. 126, 129, 64 A.2d 897 (App.Div.1949); State v. Dart, 11 N.J.Misc. 192, 165 A. 289 (Sup.Ct.1933). It has been said that "absent proof of [the] defendant's knowledge of the pugnacious reputation [of the victim, such] evidence... will not be admitted." State v. Burgess, 141 N.J.Super. at 16, 357 A.2d 62 (citing Annotation, 1 A.L.R.3d 571, 596-601 (1965)). In a variety of factual settings, we have said that "[t]his requirement makes much sense since in the context of a self-defense claim an assertion that [the] defendant's actions were influenced or prompted by the victim's aggressive reputation has little significance if [the] defendant *466 was actually unaware of that reputation." Ibid.; see also State v. Pratt, 226 N.J.Super. at 322, 544 A.2d 392; State v. Carter, 278 N.J.Super. 629, 632, 651 A.2d 1088 (Law Div.1994).
In State v. Conyers, 58 N.J. 123, 275 A.2d 721 (1971), our Supreme Court questioned the efficacy of that limitation. There, the defendant asserted that evidence of the deceased victim's aggressiveness was admissible either upon a claim of self-defense or to show that the shooting occurred accidentally during resistance to an act of aggression. Id. at 132-33, 275 A.2d 721. Citing Evid. R. 47 (since repealed), which permitted proof of a trait of character "for the purpose of drawing inferences as to the conduct of a person on a specified occasion," the Court apparently accepted the thesis that a victim's propensity toward violence could be admitted to prove he was the aggressor and the assault or killing occurred during the defendant's resistance to an act of unlawful force. Id. at 133, 275 A.2d 721. The Court found it unnecessary to resolve the issue because the victim had not been convicted of a violent crime and the defendant's proof of the victim's aggressive character trait was grounded in evidence of specific, prior acts of aggression which had long been barred by our decisions. Ibid. (citing State v. Mondrosch, 108 N.J.Super. 1, 4-5, 259 A.2d 725 (App.Div. 1969), certif. denied, 55 N.J. 600, 264 A.2d 71 (1970)).
In 1992, our Supreme Court substantially revised our evidentiary rules. Among other things, N.J.R.E. 404 replaced Evid. R. 46, 47, 48 and 55. Critical to the issue before us, subsection (a)(2) of N.J.R.E. 404 now permits the admission of:
[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor.
Rule 404(a)(2) mirrors Fed.R.Evid. 404. We thus look to federal decisions to interpret its provisions.
In United States v. Keiser, 57 F.3d 847 (9th Cir.), cert. denied, 516 U.S. 1029, 116 S.Ct. 676, 133 L.Ed.2d 525 (1995), the defendant was charged with assault. At trial, the defendant offered evidence that he shot the victim because the victim was about to kill the defendant's brother. In support of that defense, the defendant sought to admit evidence of the victim's violent character. The district court excluded this evidence, and the defendant was found guilty.
On appeal, the defendant argued that the victim's violent and aggressive character should have been admitted to support the claim that the victim was the aggressor. The government contended that the evidence was properly excluded because the defendant did not have personal knowledge of the victim's character. The Ninth Circuit concluded that the government's argument "misapprehend[ed] the purpose of presenting testimony regarding the victim's character." Id. at 854. In reaching this conclusion, the court observed that "Rule 404(a)(2) provides one of the few instances in which character evidence is admissible to allow the jury to infer that a person acted on a specific occasion in conformity with his character." Ibid. The court reasoned that "the very purpose of victim character evidence is to suggest to the jury that the victim did indeed act in conformity with his violent character at the time of the alleged crime against him." Ibid. The court emphasized that "[t]he purpose is not to provide insight into the reasonableness of the thought processes of the defendant," and "[t]hus, whether the defendant knew of the victim's character at the time of the crime has no bearing on whether victim character evidence should come in under section 404(a)(2)." Ibid. (citing John W. Strong, McCormick on Evidence § 193 (4th ed.1992)).
*467 The court next addressed what types of evidence may be presented to establish the victim's violent character. To resolve that question, the court looked to Fed.R.Evid. 405 which establishes the permissible methods of proving character under Rule 404(a)(2). Id. at 855. Federal Rule of Evidence 405 states in pertinent part that "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion." Because the defendant's proffer of evidence of the victim's aggressive character consisted of specific instances of violent acts, the court held that the evidence was properly excluded. Id. at 855.
Keiser represents an authoritative interpretation of Fed.R.Evid. 404 and 405. The federal courts are unanimous in holding that a victim's character is admissible to show that the victim was the aggressor. The following cases either state directly or implicitly that a defendant need not show he was aware of the victim's violent character as a prerequisite to admission of such evidence, but that specific acts of misconduct are not admissible to establish a character trait for violence. United States v. Talamante, 981 F.2d 1153, 1155-56 (10th Cir.1992), cert. denied, 507 U.S. 1041, 113 S.Ct. 1876, 123 L.Ed.2d 494 (1993); United States v. Piche, 981 F.2d 706, 713 (4th Cir.1992), cert. denied, 508 U.S. 916, 113 S.Ct. 2356, 124 L.Ed.2d 264 (1993); United States v. Galloway, 937 F.2d 542, 550 (10th Cir.1991) (Seymour, C.J., concurring); United States v. Comerford, 857 F.2d 1323 (9th Cir.1988), cert. denied, 488 U.S. 1016, 109 S.Ct. 812, 102 L.Ed.2d 802 (1989); Perrin v. Anderson, 784 F.2d 1040 (10th Cir.1986); Lagasse v. Vestal, 671 F.2d 668, 669 (1st Cir.), cert. denied, 457 U.S. 1122, 102 S.Ct. 2939, 73 L.Ed.2d 1337 (1982); Evans v. United States, 277 F.2d 354 (D.C.Cir.1960); United States v. Gonzalez, 907 F.Supp. 785, 794 (D.Del.1995); United States v. Perez-Casillas, 607 F.Supp. 88, 92 (D.Puerto Rico 1985).
We previously noted that N.J.R.E. 404(a)(2) is New Jersey's analogue to Fed. R.Evid. 404(a)(2). However, N.J.R.E. 405, which delineates the forms of evidence that may be presented to establish a character trait, is broader than Fed.R.Evid. 405. As noted in Keiser, Fed.R.Evid. 405 limits the types of proofs that can be admitted to prove character to reputation and opinion evidence. In contrast, N.J.R.E. 405 provides that "[w]hen evidence of character or a trait of character is admissible, it may be proved by evidence of reputation, evidence in the form of opinion, or evidence of conviction of a crime which tends to prove the trait."
We thus conclude that a victim's conviction of a violent crime may be admitted to establish that he was the aggressor. The relevance of victim character evidence in assaultive crime cases stems from its making it more likely that the victim was in fact using unlawful forcea proposition that, if true, would give rise to the defendant's justified use of self-protective forcerather than its bearing on the defendant's state of mind. Personal knowledge of the victim's propensity for violence is not a prerequisite for admission of victim character evidence under N.J.R.E. 404(a)(2). However, a victim's conviction may be excluded if, because of its remoteness, its probative value is substantially outweighed by its prejudicial effect. Cf. State v. Sands, 76 N.J. 127, 147, 386 A.2d 378 (1978).
The result we reach is not contrary to State v. Gartland, 149 N.J. 456, 694 A.2d 564 (1997). There, the defendant killed her husband in the bedroom of their home. At trial, the defendant introduced evidence that she had been the subject of domestic abuse by the decedent. She claimed that the decedent's prior acts of abuse were relevant to the jury's consideration of the objective reasonableness of her belief that deadly force was necessary to protect herself against death or serious bodily injury, and that the trial court should have instructed *468 the jury accordingly. In that context, our Supreme Court noted that our evidentiary rules "have always [permitted the admission of] evidence of a victim's violent character as relevant to a claim of self-defense so long as the defendant had knowledge of the dangerous and violent character of the victim." Id. at 473, 694 A.2d 564. The Court held that the trial judge should have instructed the jury to consider the decedent's prior acts of abuse for this purpose, but that the failure to do so did not constitute plain error. Ibid. The Court had no occasion to address the issue presented here. In our view, adoption of N.J.R.E. 404(a)(2) and its replacement of Evid. R. 46, 47, 48 and 55 radically changed the landscape of our evidentiary rules dealing with character or character traits of a victim when the defendant is accused of committing an assaultive crime. This issue was neither considered nor decided in Gartland.

III.
In light of our conclusion that Ledesma's conviction for murder was potentially admissible to establish his violent character and his conduct on the date of the killing, the matter must be remanded to the Law Division for consideration of defendant's alternative claims that (1) the prosecutor unconstitutionally concealed exculpatory evidence, or (2) defendant was denied the effective assistance of counsel. In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where [it] is material either to guilt or punishment, irrespective of the good faith or bad faith of the [State]." Id. at 87, 83 S.Ct. at 1196-97, 10 L.Ed.2d at 218. In order to establish a Brady violation, the defendant must demonstrate that (1) the prosecutor failed to disclose the evidence, (2) the evidence was of a favorable character for the defense, and (3) the evidence was material. See United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). The evidence suppressed by the prosecution is considered "material" "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985); see also State v. Landano, 271 N.J.Super. 1, 36, 637 A.2d 1270 (App.Div.), certif. denied, 137 N.J. 164, 644 A.2d 612 (1994). In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court held that the Sixth Amendment is violated where defense counsel's "performance was deficient" and such "deficient performance prejudiced the defense." Id. at 684, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; see also State v. Fritz, 105 N.J. 42, 52, 519 A.2d 336 (1987). Defendant must show there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Preciose, 129 N.J. 451, 464, 609 A.2d 1280 (1992) (quoting Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698). These are the issues that must be fully explored by the Law Division on remand.
The order denying defendant's petition for post-conviction relief is reversed and the matter is remanded to the Law Division for proceedings consistent with this opinion. We do not retain jurisdiction.