862 A.2d 1195 (2004)
373 N.J. Super. 588
STATE of New Jersey, Plaintiff-Respondent,
v.
Reymond S. VILLANUEVA, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 22, 2004.
Decided December 22, 2004.
*1196 Yvonne Smith Segars, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, of counsel and on the brief).
Peter C. Harvey, Attorney General, attorney for respondent (Michael J. Williams, Deputy Attorney General, of counsel and on the brief).
Before Judges WEFING, FALL and PAYNE.
The opinion of the court was delivered by
PAYNE, J.A.D.
Defendant, Reymond Villanueva was convicted by a jury of second-degree robbery in violation of N.J.S.A. 2C:15-1 and third-degree burglary in violation of N.J.S.A. 2C:18-2. He was sentenced to ten years of imprisonment with an 85% parole disqualifier pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on the robbery charge and to a concurrent four-year term on the charge of burglary. He appeals from his conviction for robbery and his sentence on that charge, raising the following issues:
POINT I
THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED *1197 BY THE TRIAL COURT'S FAILURE TO INSTRUCT ON THE LAW OF JUSTIFIABLE USE OF FORCE. (Not Raised Below.)
POINT II
THE TRIAL COURT DEPRIVED THE DEFENDANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I PAR. 1 OF THE NEW JERSEY CONSTITUTION BY FAILING TO INSTRUCT THE JURY ON THE LAW OF ATTEMPTED THEFT, A LESSER-INCLUDED OFFENSE OF ROBBERY THAT WAS CLEARLY INDICATED BY THE EVIDENCE. (Not Raised Below.)
POINT III
THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED WHEN THE PROSECUTOR URGED THE JURORS TO CONSIDER THE CHARACTER OF THE VICTIM NOTWITHSTANDING THE ABSENCE OF CHARACTER EVIDENCE AND THE ABSENCE OF A CHARACTER WITNESS INSTRUCTION. (Not Raised Below.)
POINT IV
THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY PROSECUTORIAL MISCONDUCT ON SUMMATION.
POINT V
THE DEFENDANT'S SENTENCE IS EXCESSIVE: THE TRIAL COURT IMPROPERLY BALANCED THE AGGRAVATING AND MITIGATING FACTORS.
We reverse, finding in the circumstances of this case that the court committed plain error in failing to charge theft as a lesser-included offense to second-degree robbery.

I.
Defendant's robbery conviction stemmed from his acknowledged attempt to steal the car radio of Christian Guidos. After breaking into Christian's car through the front passenger window and partially removing the radio, defendant was confronted by Christian, who chased, and eventually tackled and restrained defendant until the police arrived. Christian was principally assisted in apprehending defendant by his father, Ernesto Guidos.
Defendant, who testified at trial despite multiple prior convictions, admitted to the burglary and attempted theft but contested the existence of a second-degree robbery, which required proof that, while committing the theft, he had inflicted bodily injury or used force upon another.
Testimony provided by Christian and defendant differed as to what took place. According to Christian, upon hearing his car alarm and observing someone crawling in the broken passenger window of his car, he went to the area where his car was parked, confronted defendant, asked what he was doing, and "without thinking" he "tried to grab" defendant. Defendant, in turn, slapped defendant's hands off, "started kicking a little," and then "just got out [of] the car real quick." When on direct examination at trial Christian was asked to further describe the kicking, the following exchange occurred:

*1198 Q. You said he started kicking. Did he  did he make contact with you with his feet?
A. Yeah. Uh-hum.
Q. Where was he kicking you?
A. Kind of kicking, I guess to get out. I mean, just tried kicking at the window.
Q. Where was he kicking you? Where were you getting hit when he started kicking?
A. Oh. Just got hit in my hands, I guess, but 
Q. Did that cause you to do or stop doing anything once he started kicking at you?
A. Yea, I stopped and I backed off.
Q. Why?
A. I just stopped, you know, because he was kicking a lot.
Defendant then allegedly exited feet-first out of the passenger window, and, out of necessity, there being no other way, "started coming toward Christian." As defendant approached, Christian took a swing at him with a closed fist, hitting him "in the arm or something, I don't know." It was then that defendant "kind of pushed" Christian and started running through the parking lot toward the street with Christian in pursuit until, at the end of the street, defendant turned. According to Christian's testimony:
at that point I don't know if he was tired or what but, you know, he turned around, and I don't  some kind of swinging at me, and I ducked, and I grabbed him by the chest. And, you know, that's when we started struggling, we made like a 360 and we both fell on the ground.
As defendant and Christian fell, Christian stated that he hit his head on the pavement "pretty hard." Christian held on, and the struggle continued, with both eventually returning to their feet and falling again several times. At some point, Christian admittedly placed defendant's head in what he variously described as a choke hold or as a head lock, but defendant broke free.
According to Christian, as the two struggled, his father caught up to them and attempted to assist. Eventually, Christian and defendant tired, and defendant "kind of gave up." Christian lay on top of him, placing defendant's arms behind his back. Defendant remained immobilized by Christian, his father, and a third person named Eric Conti until the police arrived. As a result of the struggle, Christian claims to have sustained a lump on his head, as well as multiple scrapes and bruises on his knees and elbows. Photos of his scrapes were introduced at trial. He was examined at a hospital emergency room and, according to Christian, was told that he was "fine." Christian left prior to his discharge. No treatment was provided.
Christian's father, Ernesto, who also testified, claimed that he witnessed none of the events at the car. However, he followed Christian and defendant during the chase, testifying in the following manner:
Q. What did you do, Mr. Guidos?
A. I continued following him.
Q. How did you follow him?
A. Running.
Q. Okay, What happened? What did you see occur?
A. When they got to the corner of Maple, they were wrestling around.
Q. How did they  how did they come to come into contact with each other?
A. I just saw my son grabbing him and that's all but I was still somewhat far away from them.

*1199 * * *
Q. And what occurred between this individual and Christian?
A. Well, they were wrestling around. When I arrived, I started helping out my son.
Q. Okay. Well, how were they wrestling?
A. They were  they were fighting.
Q. When you say fighting, what do you mean?
A. My son was actually grabbing him, that's all. Fighting, I guess, both of them.
Q. Okay. Well, what was the individual doing when Christian grabbed him?
A. Trying to defend himself perhaps.
When Ernesto reached the struggling pair, he proceeded to attempt to hit and grab defendant, also. Defendant thereupon allegedly hit Ernesto in the jaw and pushed him. Ernesto "went backwards," hitting his left hand, breaking or damaging his little finger, and twisting his right ankle. He received no treatment for his alleged injuries.
Defendant provided a different version of the events. He stated that Christian initiated the confrontation by striking at him in the side of the head with a wooden bat as defendant, seated within Christian's car, struggled to remove the radio from its housing. Defendant thereupon opened the passenger door, exited the car, and ran past Christian and his father, who was also carrying a bat. Although they both converged on defendant, he was able to escape and run down the street in the direction of Route 22. A bat was thrown at defendant as he ran, but it missed. When defendant approached Route 22, he "stopped to give up." As he did so, he turned and observed Christian running full speed down the hill. When Christian approached, he grabbed defendant. As defendant describes it: "[W]e both practically looked like a helicopter blade, we both did a 360, wham, right onto the ground." Christian then grabbed defendant in a choke hold, but defendant was able to free himself. At that point, "another body" hit defendant, and he was immobilized. As he lay on the ground, defendant saw a woman that he presumed to be Christian's mother. As she verbally took defendant to task, Christian allegedly stated: "Mom, quiet down. Be quiet. Grab the bats, hide them, call the police."
Following defendant's arrest, he was treated at Muhlenberg Hospital for head injuries diagnosed as "a contusion, a crushing of deep tissues" that a police witness admitted were consistent with being hit on the head.

II.
We address first defendant's argument that the court committed plain error in failing to charge attempted theft, N.J.S.A. 2C:20-3 and N.J.S.A. 2C:5-1, as a lesser-included offense of robbery, and that by failing to charge the lesser crime, the court in essence coerced the jury into finding defendant guilty of robbery as the only means for holding him legally accountable for attempting to steal Christian Guidos's car radio. We agree.
Although defense counsel inexplicably did not seek an attempted theft charge at the conclusion of trial, that crime was admitted by defendant, and it was his position throughout the trial proceedings that his conduct constituted an attempted theft, and nothing more. We acknowledge that the evidence of defendant's conduct in confrontations with Christian Guidos and his father following their discovery of the attempted theft was sufficient to support a conviction for second-degree robbery pursuant to N.J.S.A. 2C:15-1a(1), which includes *1200 within its purview the infliction of bodily injury or force upon another "in an attempt to commit theft or in immediate flight after the attempt." See, e.g., State v. Mirault, 92 N.J. 492, 495-501, 457 A.2d 455 (1983) (holding that injuries to a police officer seeking to apprehend defendant following a theft raised the crime from a theft to a robbery). Nonetheless, the jury could have viewed defendant's conduct after he was discovered in Christian's car as causally unrelated to the theft or as justified on grounds such as self-defense, a matter that we will discuss in the next section of this opinion. A charge on attempted theft should therefore have been given. State v. Garron, 177 N.J. 147, 179-81, 827 A.2d 243 (2003), cert. denied, 540 U.S. 1160, 124 S. Ct. 1169, 157 L.Ed.2d 1204 (2004).
As Judge Pressler recently stated in State v. Simms:
It is virtually axiomatic that a defendant is entitled to the benefit of a charge explaining lesser-included offenses. The well-established rule is that if a charge on the lesser-included is requested, it must be given if rationally based on the evidence, and if not requested, must nevertheless be given if clearly indicated by the evidence. See, e.g., State v. Garron, 177 N.J. 147, 179-181, 827 A.2d 243, cert. denied, 540 U.S. 1160, 124 S.Ct. 1169, 157 L. Ed.2d 1204 (2004); State v. Savage, 172 N.J. 374, 396-397, 799 A.2d 477 (2002); State v. Dixon, 125 N.J. 223, 255-256, 593 A.2d 266 (1991). Beyond that, the judge has an independent obligation to instruct on clearly indicated lesser-included offenses even if the defendant objects. State v. Jenkins, 178 N.J. 347, 361, 840 A.2d 242 (2004).
[Simms, supra, 369 N.J.Super. 466, 471, 849 A.2d 573 (App.Div.2004).]
Because we find that the court's error in failing to charge attempted theft was "clearly capable of producing an unjust result," R. 2:10-2, we reverse and remand this matter for a new trial. State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971); Simms, supra, 369 N.J.Super. at 472, 849 A.2d 573.

III.
For the court's guidance upon retrial, we address defendant's argument that, on the evidence presented at the initial trial, he was entitled to a jury instruction on the right of self-defense against the use of excessive force pursuant to N.J.S.A. 2C:3-4. In support of his claim that such force was utilized, defendant has relied on his own testimony that Christian struck him in the head with a wooden bat after defendant was found in Christian's car, and that both Christian and his father carried bats as they chased defendant down the street. Defendant has relied additionally on testimony by both Christian and himself that, at some point after defendant stopped his flight, Christian held him in a choke hold. Defendant does not appear to argue that he notified Christian of any intent to give up his flight.
The State argues that a charge on use of force in self-defense was not warranted, even if it had been requested, which it was not, because the charge can be utilized only when the use of force by the initial aggressor (in this case, by Christian or his father) is unlawful. The State argues additionally that self-defense "does not excuse committing a robbery" and that defendant "cannot belatedly attempt[] to justify his conduct after conviction by now claiming that self-defense should have been charged since he supposedly only used force against the victims because they used force against him when attempting to stop his crime in progress." We disagree, finding that upon a suitable factual *1201 showing, self-defense may be asserted as a defense to a charge of second-degree robbery.
N.J.S.A. 2C:3-4 provides in relevant part:
a.... Subject to the provisions of this section and of section 2C:3-9, the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
b. Limitations on justifying necessity for use of force.
(1) The use of force is not justifiable under this section:
* * *
(b) to resist force used by the occupier or possessor of property or by another person on his behalf, where the actor knows that the person using the force is doing so under a claim of right to protect the property, except that this limitation shall not apply if:
* * *
(iii) The actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm.
Although N.J.S.A. 2C:3-4b(1)(b)(iii) has not been judicially construed, we are satisfied that its construction follows that utilized in evaluating conduct under N.J.S.A. 2C:3-4b(1)(a), which permits the use of reasonable force[1] in self-defense in circumstances in which a police officer has utilized excessive force in seeking to effect an arrest, regardless of whether the arrest is legal or not. See, e.g., State v. Mulvihill, 57 N.J. 151, 270 A.2d 277 (1970). As stated in Mulvihill: "If, in effectuating the arrest or the temporary detention, the officer employs excessive and unnecessary force, the citizen may respond or counter with the use of reasonable force to protect himself, and if in so doing the officer is injured no criminal offense has been committed." Id. 57 N.J. at 156, 270 A.2d 277.[2]
In Mulvihill, the Court emphasized the obligation of a citizen to submit quietly and without physical resistance to an arrest by an officer acting in the course of his duty, even if the arrest were illegal, since the right to be free from unreasonable seizure and confinement could be protected later through judicial process. Ibid. However the Court distinguished that circumstance from one in which excessive force by the arresting officer was met by reasonable resistance. Such resistance, the Court held, was lawful as a means designed to protect a person's bodily integrity and health. Id. 57 N.J. at 156-57, 270 A.2d 277. "Simply stated, the law recognizes that liberty can be restored through legal processes but life or limb cannot be repaired in a courtroom." Id. 57 N.J. at 157, 270 A.2d 277. Although recognizing a *1202 right to utilize reasonable force in this circumstance, the Court qualified the right by holding that a citizen cannot defend against an officer's excessive use of force by utilizing force greater than that which reasonably appears to be necessary. If greater force is used, the citizen becomes the aggressor and the right to claim self-defense is lost. Ibid. Moreover, if the arrestee recognizes that if he ceases his defensive measures and submits to arrest, the officer's unlawful exercise of excessive force will cease, the arrestee must submit or lose the privilege of self-defense. Ibid. See also State v. Washington, 57 N.J. 160, 162-64, 270 A.2d 282 (1970); Simms, supra, 369 N.J.Super. at 472, 849 A.2d 573; State v. Lore, 197 N.J.Super. 277, 282, 484 A.2d 1259 (App.Div.1984); State v. Moriarty, 133 N.J.Super. 563, 573, 338 A.2d 14 (App.Div.), certif. denied, 68 N.J. 172, 343 A.2d 459 (1975). Compare State v. Doss, 310 N.J.Super. 450, 456-58, 708 A.2d 1219 (App.Div.), certif. denied, 155 N.J. 589, 715 A.2d 992 (1998).
None of the decisions that we have cited turned on whether the initial force of the arresting officer was illegal or not, and, as we have noted, Mulvihill expressly found that distinction to be immaterial. The emphasis was instead on the degree of force exerted in relationship to the goal of effecting an arrest. In this circumstance, excessiveness was substituted for unlawfulness in gauging whether self-defensive force was warranted.
We recognize that in the present case no arresting officer was on the scene at the time of the initial encounter between defendant and Christian, and no officer appeared until defendant had been thoroughly immobilized by the three persons who restrained him. Nonetheless, we find no principled legal basis for distinguishing the present case from one involving the excessive use of force by an arresting officer.
A person acting in defense of personal property is similarly justified in the use of reasonable force. N.J.S.A. 2C:3-6c. Further, except in certain instances in which force is used to repel an intruder in a dwelling (see gen. N.J.S.A. 2C:3-4c; N.J.S.A. 2C:3-6b(3)), the use of force by one acting in defense of property is limited, like that of an arresting officer, to that which is reasonable in the circumstances.[3] Beyond that point, the defense of self-defense may arise if injury occurs as a result of measures taken to counter the excessive force. Cf. State v. Bess, 53 N.J. 10, 16, 247 A.2d 669 (1968).
We reject as too broad the State's argument that self-defense is unavailable as a defense to defendant because it cannot excuse commission of a robbery. In support of that position, the State relies principally on out-of-state decisions concerning armed robbery that adopt directly or by implication the principle that one who provokes an assault cannot then escape criminal liability by invoking self-defense. See, e.g., United States v. Thomas, 34 F.3d 44, 48 (2d Cir.), cert. denied sub nom Lawrence v. U.S., 513 U.S. 1101, 115 S.Ct. 774, 130 L. Ed.2d 670 (1995); State v. Bryant, 336 S.C. 340, 520 S.E.2d 319, 322 (1999); Gray v. Alaska, 463 P.2d 897, 909 (Alaska 1970); People v. Beebe, 38 Colo.App. 80, 557 P.2d 840, 841 (1976).[4]
*1203 That principle is consistent with New Jersey precedent. See, e.g., State v. Moore, 158 N.J. 292, 311-12, 729 A.2d 1021 (1999) (defendant cannot claim self-defense when he was the aggressor); State v. Bowens, 108 N.J. 622, 628, 532 A.2d 215 (1987); State v. Bryant, 288 N.J.Super. 27, 37-38, 671 A.2d 1058 (App.Div.), certif. denied, 144 N.J. 589, 677 A.2d 761 (1996); State v. Rivers, 252 N.J.Super. 142, 149-50, 599 A.2d 558 (App.Div.1991).[5]See also N.J.S.A. 2C:3-4b(2)(a) (The use of deadly force is not justifiable if "[t]he actor, with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter"). Its rationale is inapplicable in instances such as this in which defendant contends that he was not the aggressor, and that no weapon, force or threat was utilized by him at the outset.
Of course, testimony may differ in a second trial. For that reason, we direct that, upon remand, the trial court determine on the basis of the record before it and the principles that we have set forth whether a tailored charge on self-defense (State v. Gartland, 149 N.J. 456, 475-76, 694 A.2d 564 (1997); State v. Bilek, 308 N.J.Super. 1, 10-12, 705 A.2d 366 (App.Div.1998)) is warranted. If it is found to be so, we note further that the jury must be instructed that the State bears the burden of proving beyond a reasonable doubt that the defense is untrue. State v. Kelly, 97 N.J. 178, 200, 478 A.2d 364 (1984); State v. Abbott, 36 N.J. 63, 72, 174 A.2d 881 (1961); State v. Blanks, 313 N.J.Super. 55, 69-70, 712 A.2d 698 (App.Div.1998); State v. Bryant, 288 N.J.Super. 27, 35-36, 671 A.2d 1058 (App.Div.1996), certif. denied, 144 N.J. 589, 677 A.2d 761 (1996); Rivers, supra, 252 N.J.Super. at 149, 599 A.2d 558.

IV.
Because we have already found grounds for reversal as the result of the court's failure to charge the lesser-included offense of theft in this case, we need not discuss defendant's remaining claims of error. We nonetheless note that it was improper for the prosecutor to urge the jurors to consider the peaceful character of Christian and Ernesto Guidos in the absence of any evidence relating to the issue and any instruction as to the proper use of such evidence, if any. Evidence that an alleged victim possesses a peaceful trait of character is admissible pursuant to N.J.R.E. 404(a)(2) only in a homicide prosecution. See also State v. Aguiar, 322 N.J.Super. 175, 181, 730 A.2d 463 (App.Div.1999). Even if the evidence were otherwise admissible, in the present case no such evidence appears in the record. The comment, which had the capacity to negate, *1204 in part, defendant's claim of self-defense, was thus improper. State v. Frost, 158 N.J. 76, 85, 727 A.2d 1 (1999); State v. Clausell, 121 N.J. 298, 342, 580 A.2d 221 (1990).
We decline to address at length defendant's further argument that the court erred in permitting the prosecutor to argue over defense counsel's objection that Christian and Ernesto Guidos were more likely to tell the truth than defendant because they lacked any criminal convictions, finding the argument to have been incomplete at the time that the objection was interposed, and never meaningfully expressed to the jury after the objection was overruled. Nonetheless, we find no rule or precedent to support the position that the credibility of a witness can be bolstered by evidence of a lack of criminal convictions, and disapprove of any practice that suggests such to be the case.

V.
Defendant additionally challenges the sentence on his conviction for robbery as excessive. In light of our reversal of that conviction, any consideration of that argument is unnecessary. Defendant does not appeal from his sentence of four years in custody for burglary, which would not merge with convictions either for theft or second-degree robbery. State v. Subin, 222 N.J.Super. 227, 234-36, 536 A.2d 758 (App.Div.), certif. denied, 111 N.J. 580, 546 A.2d 506 (1988) (theft); State v. Pyron, 202 N.J.Super. 502, 504-05, 495 A.2d 467 (App.Div.1985) (second-degree robbery).
Defendant's conviction for burglary was not appealed. His conviction for robbery is reversed, and the matter is remanded for re-trial on that charge.
NOTES
[1] The defendant must harbor an actual reasonable belief that his use of force is necessary to prevent the imminent application of unlawful force by the assailant. State v. Kelly, 97 N.J. 178, 199, 478 A.2d 364 (1984). The reasonableness of the belief is a jury issue. Id. at 200, 478 A.2d 364. In reaching its determination, the jury must use "an objective standard of what a reasonable person would have done in defendant's position in light of the circumstances known to defendant at the time that the force was used." State v. Aguiar, 322 N.J.Super. 175, 180, 730 A.2d 463 (App.Div.1999).
[2] An arresting officer is permitted to utilize force in effecting an arrest, as are persons assisting the officer, only as set forth in N.J.S.A. 2C:3-7.
[3] Similar principles apply to tort law. See, e.g., Restatement (Second) Torts §§ 77, 81(1); Dan B. Dobbs, The Law of Torts, § 76 at 170-71 (2001); Prosser & Keeton on Torts, Ch. 4, § 21 at 132 (5th ed.1984); Hunt v. Caskey, 60 A. 42 (N.J.Sup.Ct.1905).
[4] Two of the cases upon which the State relies are statutorily based. See Snead v. State, 490 N.E.2d 761 (Ind.1986) and Henderson v. State, 795 N.E.2d 473, 478 (Ind.Ct.App.2003). As a final matter, State v. Celaya, 135 Ariz. 248, 660 P.2d 849, 854 (1983), supports defendant's position, because it finds after analyzing the facts of the matter, that the defendant was entitled to an instruction on the lesser-included offense of theft and on self-defense as it related to a determination of whether defendant could be found guilty of theft or robbery.
[5] The State additionally relies upon State v. Perry, 124 N.J. 128, 158-59, 162, 590 A.2d 624 (1991). However, the Court in that murder case found that defendant might have been entitled to a charge of self-defense if requested. Because it was not requested and because the defense strategy was "non-compatible" with the charge, the court determined that it could not conclude that the trial court committed plain error in not charging self-defense sua sponte. Id. at 162, 590 A.2d 624. See also State v. Vasquez, 265 N.J.Super. 528, 550, 628 A.2d 346 (App.Div.), certif. denied, 134 N.J. 480, 634 A.2d 527 (1993) upon which the State also relies. The principal grounds for our determination in another case cited by the State, State v. Doss, 310 N.J.Super. 450, 456-58, 708 A.2d 1219 (App.Div.), certif. denied, 155 N.J. 589, 715 A.2d 992 (1998), that a self-defense charge was not required was the fact that insufficient evidence existed to support the charge.