**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4737-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TIVON E. NEALS,

    Defendant-Appellant.

_____

Argued September 23, 2021 – Decided November 23, 2021

Before Judges Alvarez and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment Nos. 03-09-1213 and 04-09-1061.

Robert Carter Pierce argued the cause for appellant.

Jennifer Paszkiewicz, Assistant Prosecutor, argued the cause for respondent (Scott A. Coffina, Burlington County Prosecutor, attorney; Jennifer Paszkiewicz, of counsel and on the brief).

PER CURIAM

Defendant Tivon E. Neals appeals an April 29, 2019 Law Division order denying his second post-conviction relief (PCR) petition. We affirm.

On March 11, 2005, the trial judge sentenced defendant after a jury convicted him of first-degree murder, N.J.S.A. 2C:11-3(a)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1), third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); fourth-degree retaliation against a witness or informant, N.J.S.A. 2C:28-5(b); and third-degree terroristic threats, N.J.S.A. 2C:12-3(a). The judge imposed fifty years subject to eighty-five percent parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on murder and the merged possession of a weapon for unlawful purpose. He also imposed a concurrent four-year term on unlawful possession of a weapon. Finally, he merged the terroristic threats offense with retaliation and sentenced defendant to four years with one year of parole ineligibility, consecutive with count one, on the retaliation charge.

The Supreme Court denied certification after we affirmed the convictions and sentence. State v. Neals, 196 N.J. 86 (2008); State v. Neals, No. A-5053-04 (App. Div. June 25, 2007). We denied defendant's appeal of his first PCR petition based on ineffective assistance of counsel; the Supreme Court denied certification. State v. Neals, 212 N.J. 455 (2012); State v. Neals, No. A-0207-

10 (App. Div. Apr. 10, 2012). Defendant next filed an amended petition for habeas corpus, currently stayed pending these proceedings.

The judge who denied defendant's second PCR petition first denied defendant's motion for additional discovery, reasoning that granting the motion would enable defendant to "free[-]range forag[e]" across "the [p]rosecutors' old case files." Defendant represented himself on the PCR petition.

After reviewing defendant's contentions and the relevant legal standards, the judge observed defendant appeared focused on obtaining potentially exonerating discovery. Defendant's arguments, however, were not supported by the record. For example, defendant alleged that counsel failed to present exculpatory materials—yet those materials did not exist.

The judge concluded the "arguments are not based in reality, and the court views them as hopeful attempts to change what actually happened. It is not [ineffective] assistance to present non-existent evidence." He also discussed defendant's focus on supposed Brady[1] violations defendant believed that first PCR counsel should have presented. The judge considered defendant's arguments nothing more than attempts to pursue another appeal and "secure a

---

[1]  Brady v. Maryland, 373 U.S. 83 (1963).

new trial." Since defendant did not establish ineffective assistance of counsel, the judge denied the application.

In order to fully understand our analysis, we briefly discuss the underlying facts and circumstances. In August 2003, three young friends—Trent Talley, Michael Lee, and defendant—were driving in Talley's mother's car at approximately 12:30 a.m. in Burlington City. At the time, Talley was seventeen years old.

As they approached an intersection, the victim, Anthony McNair, walked up to the driver's side window and asked Talley, the driver, "what do you need?" McNair had earlier attempted to sell DVDs to folks on a nearby front porch. McNair began to pull up his shirt with his right hand when defendant fatally shot him in the mouth with a .45 caliber gun. The ammunition later found at the scene of defendant's arrest was compatible with the murder weapon.

As Talley drove away, he picked up a spent shell casing in the passenger compartment and handed it to defendant. Talley drove to a train station so Lee and defendant could return home to New York City. Talley asked them to take his mother's 9 mm gun, which had neither bullets nor a clip, because he now feared being stopped and found in possession of the weapon.

Talley later gave a statement implicating defendant to the Burlington County Prosecutor's Office. He participated in a consensual intercept, during which defendant admitted to shooting McNair, explaining he feared McNair was going to shoot them. When Talley asked about defendant's mother's gun, defendant told him to leave the subject alone for a while. The State played the recording for the jury.

The warrant for defendant's arrest included an officer's affidavit asserting that the perpetrator was identified as a "light[-]skinned black male." Search warrants for Talley's New Jersey home and defendant's New York home included a similar description of the perpetrator.

When police executed the search warrant of defendant's home, defendant ran towards the back of the apartment and threw a Nike shoe box over the side of a balcony. The box contained .45 caliber automatic pistol cartridges, the 9 mm semi-automatic pistol belonging to Talley's mother, 9 mm bullets, and ammunition in various calibers.

Talley testified at trial against defendant, although a bench warrant had to be issued to secure his appearance. Lee's sworn deposition testimony also identified defendant as the shooter. When Lee testified at a pretrial deposition,

defendant told Lee as he walked by that he would get "popped" when he returned "north."

The State presented additional witnesses at trial, none of whom were close enough to the car to give definitive descriptions of the occupants. At least one, however, said that the shooter was a dark-skinned black male.

Defendant's core issue on appeal is that the State violated <u>Brady</u> by withholding exculpatory evidence that the shooter was a light-skinned black male, which defendant says does not describe his appearance. Specifically, defendant contends an audio recording of an interview with a witness named Anthony Tucker was never turned over in discovery. During the interview, Tucker reported that the person in the front passenger seat was a light-skinned black male. Tucker was no closer to the vehicle than other witnesses on the street. We were told at oral argument that the material had been located and turned over.

Now on appeal, defendant raises the following points:

POINT I

THE PCR COURT ERRED BY DENYING [DEFENDANT'S] PCR BECAUSE [DEFENDANT] ESTABLISHED THE STATE COMMITTED <u>BRADY</u> VIOLATIONS, WHICH WARRANT REVERSAL OF HIS CONVICTION AND DISMISSAL OF THE INDICTMENT.

A-4737-18

POINT II

[DEFENDANT] WAS DEPRIVED [OF] EFFECTIVE ASSISTANCE OF PCR COUNSEL.

POINT III

THE PCR COURT ERRED BY DENYING [DEFENDANT] AN EVIDENTIARY HEARING BECAUSE [DEFENDANT] ESTABLISHED A PRIMA FACIE CASE THAT THE STATE COMMITTED BRADY VIOLATIONS AND THAT HE WAS DEPRIVED EFFECTIVE ASSISTANCE OF TRIAL AND PCR COUNSEL.

I.

We begin with defendant's assertion that the State's alleged Brady violation was so prejudicial that the judgment should be vacated, and the indictment dismissed. Defendant further asserts that the failure of trial and PCR counsel to properly develop the identification issue constituted ineffective assistance of counsel. That claim, which implicates defendant's first two points, lacks merit.

A defendant pursuing an ineffective assistance of counsel claim must establish that counsel's representation fell outside professional norms and deprived defendant of a fair trial. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In essence, we ask "whether counsel's conduct so undermined the

7

proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.

Furthermore, to make out a prima facie case that warrants a PCR evidentiary hearing, a "defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b).

Even if we assume for the sake of argument that Tucker's recorded statement should have been made available to defendant and was willfully withheld—although the record does not suggest such a willful failure—earlier discovery would not have made a difference. Pursuant to Brady, discovery that a prosecutor fails to turn over must be exculpatory and material. State v. Aguiar, 322 N.J. Super. 175, 185 (App. Div. 1999). Such evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the results of the proceeding would have been different." Ibid. (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). In this case, the evidence would not have made a difference.

Talley and Lee, both present in the car when the shooting occurred, identified defendant as the person who killed McNair. The telephone intercept is equally damning—defendant's suggestion that the slang terminology used

during the conversation made it impossible to decipher lacks merit. Defendant's recorded statement is a facial admission of guilt, and even explains defendant's motive for killing McNair.

Furthermore, at the first PCR hearing that occurred back in 2010, defendant told the court:

> [O]ne of the detectives said specifically in an affidavit in support of probable cause that there [were] two people in the vehicle according to his witnesses and . . . investigation. . . . [N]one of this was heard by the trier of fact, the jury, so basically . . . my trial attorney . . . knew specifically that this evidence was in existence. He was supposed to put it on the stand and he chose not to.

This means defendant and his counsel have always known about the discrepancies in the affidavits of probable cause describing the occupants of the vehicle. They were described as two black males, not three. The front seat passenger, the shooter, was described as a light-skinned black male.

These descriptors, however, would not have impacted the outcome. The proofs against defendant were solid: the telephone intercept during which he acknowledged culpability, and the testimony of the other two men in the car. Thus, defendant cannot establish a Brady violation because the evidence had no significant exculpatory value. Trial counsel knew of the varying descriptions

A-4737-18

before trial; no doubt PCR counsel did as well.  Because no Brady violation occurred, the judge's denial of defendant's applications was not error.

If Tucker's interview would not have made a difference to the outcome of the proceeding, then defendant has not met the second prong of the Strickland test.  He failed to make out a prima facie case and is not entitled to an evidentiary hearing.  See R. 3:22-10(b); State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

II.

Defendant next contends that the court erroneously applied rule bars, specifically Rules 3:22-4 and 3:22-5, because the Brady arguments could not have been previously raised.  He also contends that any procedural bars should be set aside in light of his constitutional rights to pretrial discovery and effective assistance of counsel.  But no constitutional violation or Brady violation occurred.

Counsel's failure to argue that defendant did not match Tucker's skin tone description is simply not a constitutional infringement because two eyewitnesses identified defendant as the shooter, and defendant admitted guilt during a phone intercept.  The description of the perpetrator as a light-skinned black male was contained in documents, including the certification in support of probable cause

which was appended to defendant's arrest warrant. Defense counsel, and defendant personally, no doubt had access to these documents. Defendant's on-the-record discussion at the first PCR makes that clear.

Furthermore, a second or subsequent petition for PCR must be filed less than one year after the date on which the factual predicate for the argument was discovered or "the date of the denial of the first or subsequent application for [PCR] where ineffective assistance of counsel that represented the defendant on the first subsequent application for [PCR] is being alleged." See R. 3:22-12(a)(2)(C). Defendant's second PCR petition was filed nine years after his first.

The clock did not begin to tick when defendant was able to narrow the search for Tucker's recorded statement. Defendant knew all along that there was no unanimity in the subjective descriptions of his skin tone. The clock has been ticking since defendant's trial. Thus, application of the time bars is reasonable.

As the judge stated, defendant continues to search for reasons he is entitled to a new trial in the hope of a different outcome. In the face of Talley and Lee's testimony, and the phone intercept, the unsurprising confusion of bystanders at varying distances from a strange car when an unexpected late-night shooting occurred simply would not change the outcome. Short of distorting the record, defendant cannot argue that Tucker's description was consequential.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4737-18